No. 13713

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

STEPHEN A. THOMPSON,

Defendant and Appellant.

Appeal from: District Court of the Fourth Judicial District,
Honorable E. Gardner Brownlee, Judge presiding.

Counsel of Record:

For Appellant:

Wm. George Harris argued, Missoula, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Charles R. Anderson, Assistant Attorey General, argued,
Helena, Montana
Robert Deschamps III, County Attorney, argued, Missoula,
Montana

Submitted: March 3, 1978

Decided: MAR 28 1978

Filed: MAR 2 1978

*Thomas J. Kearney*
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant Stephen A. Thompson was charged with two counts of perjury in the District Court of Missoula County based upon his sworn testimony in the homicide trial of Levi Stump. The jury acquitted defendant Thompson of count I and convicted him of count II. Following denial of defendant's motion for a new trial on count II, he appeals.

Pursuant to a plea bargaining agreement with the prosecutor, defendant Thompson agreed to testify for the State in the deliberate homicide trial of Levi Stump who was accused of killing Charles Daniels. On June 25, 1976 defendant Thompson testified in the Stump trial. His direct testimony was that he and Stump had killed Daniels; on cross-examination he retracted this testimony by testifying that neither he nor Stump had anything to do with killing Daniels. The Stump trial ended in a mistrial.

On July 8, 1976 defendant Thompson was charged with perjury. The amended information charged two counts of perjury: Count I charged perjury based upon defendant's inconsistent statements in a single proceeding; Count II charged perjury based on defendant's testimony in the Stump trial that he saw the victim lying on the ground bleeding on April 22 and April 23 near where the body was found on April 25, 1976. Defendant Thompson plead not guilty to each count.

Thereafter the District Court denied defendant's motion to dismiss the amended information. Later, following a hearing, the District Court denied defendant's motion to suppress his statements to police following his arrest in the Daniels homicide.

Defendant's trial on the perjury charges commenced on October 8, 1976. At the close of the State's case-in-chief,

defendant moved for a directed verdict in his favor and dismissal of the amended information which was denied.

Defendant offered no testimony in his defense and rested his case. The jury acquitted defendant of Count I and convicted him of Count II. Defendant's motion for judgment notwithstanding the verdict on Count II was denied.

Defendant was sentenced to ten years in the state prison with five years suspended. Later an amended judgment was entered whereby defendant was incarcerated at the Swan Lake Youth Correction Facility. Following denial of his motion for a new trial, defendant appeals.

On appeal, we consolidate the issue into six specifications of error raised by defendant:

(1) Denial of his motion to suppress his statements given to police following his arrest in the Daniels' homicide.

(2) Denial of his motion to dismiss Count II of the amended information.

(3) Denial of his motion for a directed verdict at the close of the State's case-in-chief.

(4) Denial of his motion for judgment notwithstanding the verdict on Count II.

(5) Errors in instructing the jury.

(6) Denial of a fair trial based on the State's closing argument to the jury.

Issue 1. Defendant claims that his arrest without a warrant in the Daniels' homicide was unlawful so his statements given to the police were involuntary and should have been suppressed.

The record discloses that none of the statements defendant sought to have suppressed were admitted in evidence in his perjury trial. Under such circumstances, defendant's

specification of error lacks substance. This Court does not decide academic, theoretical or moot questions. Adkins v. City of Livingston, (1948), 121 Mont. 528, 194 P.2d 238. Although defendant argues that this issue must be considered because the present case was an outgrowth of the Daniels' homicide case, we adhere to the rule that this Court confines its rulings to the case on appeal. Feely v. Lacey, (1958), 133 Mont. 283, 322 P.2d 1104. As defendant's statements to the police following his arrest in the Daniels' homicide were not used in his perjury trial, his specification of error lacks relevance in this appeal.

Issue 2. Defendant specifies error in the District Court's refusal to dismiss the perjury charge in Count II prior to trial. He argues that his testimony in the Stump trial that he saw the victim lying on the ground bleeding two and three days prior to discovery of the body near the same location was not material to the issue in the Stump trial, specifically who killed Daniels.

Montana's perjury statute, Section 94-7-202, R.C.M. 1947, provides in pertinent part:

"Perjury. (1) A person commits the offense of perjury if in any official proceeding he knowingly makes a false statement under oath * * * when the statement is material.

" * *

" (3) Falsification is material, regardless of the admissibility of the statement under rules of evidence, if it could have affected the course or outcome of the proceeding. It is no defense that the declarant mistakenly believed the falsification to be immaterial. Whether a falsification is material in a given factual situation is a question of law."

The test of materiality/whether in the actual factual situation involved, it would be reasonable to find that the defendant's statement, if believed, could have altered the course or outcome of the proceeding. State v. Scanlon, (1977), 34 St.Rep. 956, ____Mont.____, 569 P.2d 368; State v. Hall, (1930), 88 Mont. 297, 292 P.2d 734.

- 4 -

This is the same test that applied under the prior perjury statute. State v. Scanlon, supra.

Here defendant's testimony in the Stump trial that he saw Daniels lying bleeding on April 22 and April 23 near the place where Daniels' body was found on April 25 reasonably could have affected the outcome of the Stump trial. Defendant Thompson's statement, if believed by the jury, would furnish a basis for determining / that Daniels died from wounds inflicted by someone other than Stump and Thompson. Stump's defense was that someone else killed Daniels and not him; Thompson's statement, as the prosecution's principal witness, substantiated Stump's defense.

Accordingly, we hold that defendant Thompson's sworn statement was material and could have affected the outcome of the Stump trial. The District Court was correct in denying defendant's motion to dismiss Count II of the amended information.

Issue 3. Here defendant repeats his argument that his testimony was not material and further argues that his statement was not false.

In this case the jury, if it believed the State's witnesses, could find that Daniels was seen alive and well between April 22 and April 25; that defendant Thompson falsely gave sworn testimony in the Stump trial that he saw Daniels bleeding, in the area where his body was later found some two and three days prior to discovery of the body. A directed verdict for the defendant in a criminal case can only be given where there is no evidence on which the jury could base a conviction. State v. Paulson, (1975), 167 Mont. 310, 538 P.2d 339. The District Court was correct in denying defendant's motion for a directed verdict.

Issue 4. Defendant next claims error in the District

- 5 -

Court's denial of his motion for judgment notwithstanding the guilty verdict on Count II of the amended information. He argues that the verdicts in this case must be identical; that acquittal on Count I bars conviction on Count II. He further contends that because of his defense of retraction, the verdict on both counts must be consistent and he cannot be charged and convicted of perjury on Count II because of his retraction.

Consistency in verdicts on multiple charges is not required in all cases. Dunn v. United States (1932), 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356. Defendant recognizes this principle but maintains that in this case consistency is required because the elements of the offenses charged in both counts are the same and because of his defense of retraction.

Where separate acts are charged in an information, each act is a separate offense and acquittal or conviction of one or more counts does not affect the other counts. State v. Boe, (1963), 143 Mont. 141, 388 P.2d 372. Here each count in the amended information filed against the defendant states a separate offense of perjury. Acquittal of Count I does not bar conviction of Count II because the elements charged in the two counts are different.

To prove Count I, the State had to show that the defendant made inconsistent statements in the Stump trial and that one of the inconsistent statements was false and was not believed to be true by the defendant. To prove Count II, the State had to show that defendant knowingly made a false and material statement under oath, not that he made inconsistent statements during the Stump trial. As the elements of the two offenses charged were different, consistency of the two verdicts was not required.

- 6 -

The defense of retraction is irrelevant to defendant's conviction of perjury in Count II of the amended information. Count II charged defendant with perjury based upon his sworn testimony in the Stump trial that he saw Daniels bleeding on April 22 and April 23 in the area where the body was found on April 25. This statement was made on redirect examination and was not retracted thereafter. Thus the essential elements of a retraction of this statement are missing, viz. a different and true statement following a prior falsification in the same proceeding. Section 94-7-202(5), R.C.M. 1947. The District Court was correct in denying defendant's motion for judgment in his favor notwithstanding the guilty verdict on Count II.

Issue 5. We find no substance to defendant's contention that the jury was improperly instructed.

No error was committed in giving State's proposed instruction No. 6 and refusing defendant's proposed instruction No. 12. Both relate to inconsistent statements made under oath and contain the statutory language of section 94-7-202(6), R.C.M. 1947, except that the State's proposed instruction omits the words "both having been made within the period of the statute of limitations * * *". Both instructions related to Count I of which defendant was acquitted; there was never an issue concerning the statute of limitations in  the case; and the instruction given is a correct statement of the law as applied to the evidence in the case.

Nor was there any error in refusing defendant's proposed instruction No. 16 on corroboration of perjury. Court's instruction No. 13 covering this subject was given to the jury; it incorporated the requirements of section 94-7-202(7), R.C.M. 1947, and was a correct statement of the law; and the refused instruction was redundant.

Issue 6. Defendant's final contention is that the State's closing argument to the jury denied him a fair trial. He objects to the State's arguing to the jury that perjury in a homicide case could have disastrous effects in that an innocent man could be hanged or a killer go free; that the State attempted to use information, facts and testimony not in evidence at the trial; and that his presumption of innocence and his right to be fairly judged by the jury was destroyed.

The State's comments in closing argument on the effect of perjury in a homicide trial were unobjectionable. The following quotation is a correct statement of the law on this subject:

> "Generally, the gravity of the crime charged, the volume of the evidence, credibility of the witnesses, inferences to be drawn from various phases of evidence, and legal principles involved, to be presented in instructions to the jury, are all matters within the proper scope of argument. * * *"  [Emphasis supplied.] 23A C.J.S., Criminal Law, Sec. 1090, page 129.

Here the State was simply informing the jury what effect perjured testimony could have in a homicide trial. This is simply a comment on the gravity of the crime charged and well within the scope of proper argument to the jury.

Nor did the State's closing argument to the jury encompass information, facts or testimony not in evidence at the trial. We recognize that discussing facts not in evidence in a closing argument to the jury is improper. State v. Toner,(1953), 127 Mont. 283, 264 P.2d 971.  We also note that repeated attempts to place excluded evidence before the jury is reversible error.  State v. Bain, (1978), 35 St.Rep. 257, ____Mont.____, ____P.2d____.

However, in this case the transcript of testimony in the Stump homicide trial was admitted in evidence in the perjury case now on appeal.  In that transcript there are numerous references to various individuals and statements by

- 8 -

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 13713

. . . . . . . . . .

STATE OF MONTANA,

   Plaintiff and Respondent,

 v.

STEPHEN A. THOMPSON,

   Defendant and Appellant.

FILED

APR 26 1978

*Thomas J. Kearney*

CLERK OF SUPREME COURT
STATE OF MONTANA

. . . . . . . . . . .

ORDER AMENDING OPINION

. . . . . . . . . . .

The above named opinion, issued March 28, 1978, should be amended by deleting the present Page 9 (except for the signatures of authoring and concurring justices) and replacing it with the attached Page 9.

DATED this 25th day of April, 1978.

        *Frank I. Haswell*
        ——————————————
         Chief Justice

defendant. The State's closing argument attempted to explain that transcript to the jury so they could understand it and not be mislead by it. With one exception, the District Court did not sustain defendant's objections to the State's closing argument. Thus, this case does not present the situation where the State made repeated attempts to get inadmissible matters before the jury.

Finally, we find no denial of defendant's right to a fair trial in the State's closing argument. A correct general statement of the applicable law has been stated in this language:

> "The defendant in a criminal case has the right to a fair trial. It is axiomatic that prejudice can be implied from the denial or invasion of that right. However, the defendant must show that his right to a fair trial was denied or invaded." State v. Bradford, (1978), ____ Mont. ____, 575 P.2d 83, 86, 35 St.Rep. 241.

Or stated another way:

> "The rule applicable is that before a judgment in a criminal case will be reversed, prejudice in a criminal case will not be presumed, but rather must appear from the denial or invasion of a substantial right from which the law implies prejudice. The defendant must demonstrate prejudice from the record. (Citation omitted.)" Bradford, 575 P.2d 86.

The record in this case fails to show denial or invasion of defendant's right to a fair trial in the State's closing argument. With one exception the State's argument to the jury was unobjectionable; that exception was corrected by the District Court's admonition.

Affirmed.

(Frank I. Haswell)
Chief Justice


We Concur:

(Gene B. Daly)

(John Conway Harrison)

(Daniel J. Shea)
Justices

(Bernard W. Thomas)
District Judge