No. 82-127

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

_____

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

CLIVE LAPP,

Defendant and Appellant.

_____

Appeal from: District Court of the Sixteenth Judicial District,
In and for the County of Custer
Honorable A. B. Martin, Judge presiding.

Counsel of Record:

For Appellant:

Brown and Huss, Miles City, Montana
George Huss argued, Miles City, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
James M. Scheier argued, Legal Intern, Office of
Attorney General, Helena, Montana
Keith D. Haker, County Attorney, Miles City, Montana

_____

Submitted: November 24, 1982

Decided: February 4, 1983

Filed: FEB 4 1983

<u>Ethel M. Harrison</u>
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant Lapp was charged and convicted of negligent homicide by a Custer County jury. He now appeals the judgment of conviction and the denial of his motion to suppress. We affirm.

At around 6:00 a.m. on September 16, 1981, defendant Lapp was involved in a two-car collision in Custer County. Lapp's vehicle was proceeding east in the west-bound lane of Interstate 94, a divided highway, when it collided with a vehicle driven by Merlin Benjamin. Benjamin died as a result of injuries sustained in the accident.

Lapp was taken to the hospital by ambulance before the investigating highway patrolman, Robert Bishop, arrived at the scene. Bishop's investigation showed that the Benjamin vehicle had been traveling very slowly at the moment of collision, while the vehicle with license plates registered to Lapp was traveling at approximately 80 m.p.h.

Bishop left the accident scene but was called back a short time later. On the second visit, Bishop talked to Dale Cunningham, the other occupant of the Lapp vehicle. Cunningham had left the car after the accident and later returned after Bishop's initial departure. Bishop questioned Cunningham briefly about the accident. Cunningham told the officer his name, stated that he had not been driving and told Bishop that Lapp was the driver. Cunningham was then taken to the hospital by ambulance.

Bishop first questioned Lapp at the hospital at 10:25 a.m. that morning. Lapp had been admitted to the emergency room for minor injuries and for observation. Bishop asked Lapp his name, date of birth, and whether he had been

-2-

driving the vehicle at the time of the accident. Lapp responded with his name and date of birth. He then stated that he was driving, that the accident was "all his fault," and that they "could do anything they wanted to" with him.

Lapp was not given a Miranda warning prior to questioning. There were two nurses present while Lapp was questioned. At no time prior to, during or immediately after his talk with Lapp did Bishop place defendant under arrest.

Lapp's blood-alcohol analysis established a blood alcohol content of approximately .225% at the time of the accident. Bishop further examined both vehicles and discovered a tooth imbedded in Lapp's dashboard near the center but on the passenger side. It was later established that the tooth was Cunningham's.

Lapp presents four issues on appeal:

(1) Whether defendant was "in custody" when questioned by Patrolman Bishop;

(2) Whether the attending physician should have been allowed to testify as to whether injuries suffered by the other occupant of defendant's car were consistent with his having struck the steering wheel;

(3) Whether the jury was properly instructed on the factors to consider in determining the reliability of defendant's admission; and

(4) Whether substantial evidence supports the verdict.

Lapp first contends that he was "in custody" when questioned by Patrolman Bishop at the hospital. He argues that at that point of questioning he had become the focus of the investigation and that the questioning had therefore

-3-

passed from the investigatory stage to the accusatory stage as distinguished in Escobedo v. Illinois (1964), 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. Defendant asserts that where such accusatorial attention had focused upon him, the questioning became custodial interrogation and the patrolman was required to give Miranda warnings prior to questioning. Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Where the patrolman failed to give such warnings, Lapp concludes that the District Court erred in failing to suppress his statement. Lapp also argues that the circumstances of questioning were such as to significantly deprive him of his freedom of action. We reject both arguments.

Lapp's reliance on Escobedo's distinction between investigatory and accusatory stages is misplaced. The United States Supreme Court, in Miranda, defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. (Emphasis added.) In Footnote 4 following that definition the Court stated: "This is what we meant in Escobedo when we spoke of an investigation which had focused on an accused." Miranda, 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. The Court has since flatly applied the rule that "Miranda warnings are required only when there has been such a restriction on a person's freedom as to render him 'in custody.'" Oregon v. Mathiason (1977), 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714, 719. (Emphasis added.)

-4-

This Court has followed Oregon v. Mathiason in applying that test. State v. Graves (1981), ____ Mont. _____, 622 P.2d 203, 207, 38 St.Rep. 9, 12; State v. Dupre (1982), ____ Mont. _____, 650 P.2d 1381, 39 St.Rep. 1660. In Dupre, this Court stated that "[a] custodial interrogation situation requiring Miranda warnings is not created simply because an individual is the focus of an investigation." 650 P.2d at 1384, 39 St.Rep. at 1663. The issue then becomes whether Lapp was "deprived of his freedom of action in any significant way." We hold that he was not.

Courts have considered a number of factors in determining whether a suspect is in custody or has been significantly deprived of his freedom of action for purposes of Miranda warnings. The factors include the place of interrogation, the time of interrogation, persons present during interrogation, whether Miranda warnings were gratuitously given, the length and mood of interrogation, and whether or not the suspect was arrested following questioning. Cummings v. State (1975), 27 Md.App. 361, 341 A.2d 294, 300-305. In Cummings, the court also noted the irrelevancy of the "investigative focus" criteria following Miranda. 341 A.2d at 306. It distinguished Escobedo's subjective rule (whether a police officer thinks that the suspect is the focus of the investigation) from the objective Miranda standard (whether or not a reasonable person being interrogated would feel he was in custody or otherwise significantly deprived of his freedom). See also, Lowe v. United States (9th Cir. 1969), 407 F.2d 1391, 1397; Williams v. United States (9th Cir. 1967), 381 F.2d 20, 22. The court in Cummings noted that the majority of cases have held that in-hospital

questioning does not amount to custodial interrogation. 341 A.2d at 301.

There the questioning took place in a hospital room at about noon. The suspect's wife and another person were present during the brief and nonaccusatory interview. He was not placed under arrest before, during or after the questioning. The court found that the questioning was noncustodial in nature.

In the instant case, Lapp was questioned in the emergency room of the hospital with two nurses present. Patrolman Bishop asked Lapp only his name, his date of birth, whether he was driving, what speed he was traveling, and whether he would be willing to take a blood test. He was not placed under arrest before, during or immediately following the questioning.

This Court has previously considered in-hospital interrogation. State ex rel. Berger v. District Court (1967), 150 Mont. 128, 432 P.2d 93. There, we noted that the defendant was not "in custody" in any legal sense of the word. Nor was she otherwise significantly deprived of her freedom. We held that the District Court erred in suppressing statements when no coercion was used to overcome the suspect's freedom of choice. Our position has not changed. See also: People v. Gilbert (1967), 8 Mich.App. 393, 154 N.W.2d 800; State v. Sandoval (1969), 92 Idaho 853, 452 P.2d 350; State v. Brunner (1973), 211 Kan. 596, 507 P.2d 233. The District Court properly denied Lapp's motion to suppress upon finding that the questioning was noncustodial in nature.

Lapp next raises the argument that the attending

-6-

physician should have been allowed to testify as to whether injuries suffered by Cunningham were consistent with his having struck the steering wheel. During cross-examination of the physician by defense counsel, the following exchange took place:

"Q. Are there anything--is there anything about Mr. Lapp's injuries from your examination of him, that is consistent with his being the driver?

"MR. HAKER: I'm going to object to that.

"THE COURT: Sustained.

"BY MR. HUSS: Q. Have you in your years of training and as a physician and surgeon, had an opportunity to view victims of automobile accidents? A. Yes.

"Q. Approximately how many victims of automobile accidents would you say you've seen? A. Hundreds.

Q. In viewing those victims, are you able to--and the types of injuries that they received, are you able to arrive at any conclusions as to how they received their injuries in an automobile accident? A. You normally don't do that, because I think it's conjecture on our part, so we take care of what is wrong and usually focus on that."

Defense counsel then made four attempts to ask the doctor whether the injuries sustained by Cunningham were consistent with the injuries that can be sustained by striking a steering wheel. The State objected in each instance on the basis that the witness had indicated it would be conjecture on his part to try to state that. The District Court sustained each objection. On the third attempt, the court sustained on the basis that defense counsel was invading the province of the jury.

Defendant argues that the physician was not asked to draw the ultimate conclusion that Cunningham had struck the

steering wheel with his chest. Rather, the doctor was properly asked as an expert witness to give an opinion as to the cause of injuries. We agree that under normal circumstances the doctor's opinion as to the cause of Cunningham's injuries would have been admissible. State v. Close (1981), _____ Mont. _____, 623 P.2d 940, 946, 38 St.Rep. 177, 184. The District Court erred in sustaining the objection on the basis that the question invaded the province of the jury.

Where prejudice is alleged in a criminal case, it will not be presumed but must be established from the record that a substantial right has been denied. State v. Dupre, 650 P.2d at 1386, 39 St.Rep. at 1666.

In the instant case defense counsel laid an inadequate foundation for eliciting testimony on the cause of the injuries. The physician specifically stated that he did not normally form conclusions as to the cause of injuries in automobile accidents because it would only be conjecture on his part. The objections should have been sustained on that basis. Further, detailed testimony was elicited on Lapp's fairly minor injuries and on Cunningham's extensive injuries. Finally, the two ambulance attendants testified that Cunningham's injuries were consistent with impact with a steering wheel and that Lapp had no injuries consistent with such impact.

There was sufficient evidence before the jury on the extent of both individuals' injuries and the possible causes of those injuries to allow a jury determination. Cf. Weber v. Biddle (1967), 72 Wash.2d 22, 431 P.2d 705, 708. Defendant has failed to demonstrate prejudice. Any error was harmless. State v. Fitzpatrick (1980), _____ Mont. _____,

-8-

606 P.2d 1343, 1353, 37 St.Rep. 194, 206.

Defendant next challenges the District Court's refusal to give a jury instruction detailing factors the jury should consider in determining the reliability of defendant's admission. He contends that the following instruction should have been given:

> "In considering the weight and effect of prior statements, if any, by a witness inconsistent with the witnesses [sic] testimony at trial, you may consider the witnesses [sic] physical and mental condition at the time of the making of such statement, his intoxication or lack of intoxication, whether such statement was given under oath, any bias, prejudice, interest or motive that the witness may have had in making such statement and whether the witness admits or denies the making of such prior statement."

This Court has previously held that "where the jury is adequately instructed no error occurs for failure to give a party's proposed instruction which is already covered." State v. Smith (1975), 168 Mont. 93, 100, 541 P.2d 351, 355. In such a situation, counsel has full opportunity to argue the merits of the defense. Here, substance of the refused instruction was adequately covered by Instruction No. 17, which defined admissions and then stated:

> "You are the exclusive judges as to whether an admission was made by the defendant and if the statement is true in whole or in part. If you should find that such statement is entirely untrue, you must reject it. If you find it is true in part, you may consider that part which you find to be true.
>
> "Evidence of an oral admission of the defendant ought to be viewed with caution."

Defense counsel elicited extensive testimony concerning Lapp's injuries, his disorientation, and all of the circumstances surrounding the admission. The jury was

adequately instructed.

Defendant finally challenges the sufficiency of the evidence. He argues that unrefuted evidence presented by the defense expert witness established that it was physically impossible for Lapp to have been in the driver's seat and for Cunningham to have been in the passenger's seat. Defendant's expert witness, a former physics instructor at Miles City Community College, testified that if the rear of the Lapp vehicle swung to the right after impact, the occupants of the car would have been thrown toward the right of the vehicle. Lapp concluded that Cunningham must have been in the driver's seat since his tooth was imbedded in the dashboard to the right of the steering wheel. Defendant also argues that the injuries sustained by the two occupants of the car are consistent to support the defense contention that Cunningham was the driver.

This Court applies the standard set forth by the United States Supreme Court in Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573, and adopted in State v. Plouffe (1982), ____ Mont. _____, 646 P.2d 533, 538, 39 St.Rep. 1064, 1070. The Jackson standard is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 646 P.2d at 538, 39 St.Rep. at 1070. Applying that standard, we find sufficient evidence to support the verdict.

When faced with conflicting evidence, this Court will not overturn the a jury's verdict where sufficient evidence to sustain the conviction is contained in the record even

though enough evidence to prove the contrary conclusion is also present in the record. State v. Campbell (1980), ____ Mont. ____, 615 P.2d 190, 200, 37 St.Rep. 1337, 1348. The defendant in Campbell was also charged with negligent homicide after a death resulting from an accident. Defendant's physics expert testified that the driver of the vehicle would have been thrown from the car as a result of the collision. Defendant was found inside the vehicle. The State presented conflicting testimony that included a statement by one of the passengers that Campbell was the driver. We upheld Campbell's conviction.

Here, the State introduced evidence showing that the license plates on the vehicle were issued to Lapp. Defendant and Cunningham each told Patrolman Bishop that Lapp was driving. Cunningham testified that he did not remember ever having driven Lapp's vehicle. Finally, Cunningham's tooth was imbedded in the dashboard on the passenger side of the vehicle. Substantial evidence supports the conviction.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

-11-