No. 82-346

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

JAMES GEORGE,

Defendant and Appellant.

---

Appeal from:   District Court of the Fourth Judicial District,
In and for the County of Missoula
Honorable John Henson, Judge presiding.

Counsel of Record:

For Appellant:

Martha A. McClain, Missoula, Montana
Fred Van Valkenburg, Missoula, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Robert L. Deschamps, III, County Attorney, Missoula,
Montana

---

Submitted on briefs: February 3, 1983

Decided: March 10, 1983

Filed: **MAR 10 1983**

*Ethel M. Harrison*

_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This is an appeal from a judgment against the defendant, James George, for aggravated assault in the District Court of the Fourth Judicial District, Missoula County. We affirm the judgment of the District Court.

On the morning of October 2, 1981, Linda McQuiston, a vocational-technical student, arose very early to clean her apartment before going to school. After a visit to a nearby market, she returned home and saw James George moving his belongings into the apartment building where she lived. George invited McQuiston into his apartment to look at some of his etchings. She accepted the invitation and remained in George's apartment for about 15 minutes. During this time, they discussed a mutual acquaintance, Mike Garvin. McQuiston told George that she did not like Garvin. George told her that Garvin was probably going to stay with him on some weekends. George then asked McQuiston if he could borrow some clothes hangers. McQuiston testified she told George that she would leave the hangers by his door on her way to school and returned to her apartment.

Later, George knocked on McQuiston's door and asked her if he could borrow a knife. McQuiston testified that George was smoking a joint, which he put out upon her request. She offered him a soft drink, which he accepted. She gave him a knife and testified that it was "somewhere between a paring knife and a butcher knife" in size. From this point their recollection of events differs significantly.

McQuiston testified that she returned to sit on her bed, which she used as a sofa. George walked around the one room

1

apartment and told her that he liked it. He then sat on the other end of the bed and without warning, struck her in the chest with the knife. After impact, the knife broke in several pieces. After striking her George said, "I just want you to know Mike Garvin does hire people to kill others." She testified that when she saw the knife coming at her she thought George was going to kill or rape her. She fell back against the bed and started screaming.

George testified that before the attack occurred, the parties were standing in McQuiston's apartment. McQuiston swung around and George thought she was going to strike him. He then hit her in the chest to knock her back. He testified that he hit her with his hand, the same hand that was holding the knife. The blade of the knife broke upon impact and cut his hand. George denied saying that Garvin hired people to kill others. When McQuiston started to scream, George warned her never to "swing at him again" and asked her to "be quiet." He then left the apartment and testified that he remained in his own apartment until he went for coffee with his ex-wife and his girlfriend and was arrested.

McQuiston testified that she locked the door after George left the room and "fell apart." Her next door neighbor Deborah Hayes heard sobbing and saw McQuiston leave her apartment. Hayes called to McQuiston who then ran into Hayes' apartment and begged her to call the landlord.

McQuiston was taken to St. Patrick's Hospital where she was examined, given a tranquilizer and released. She had a contusion on her chest but the skin was not broken. McQuiston testified that she had trouble breathing deeply for several weeks after the incident. She returned to school

2

where a teacher called her parents and requested they take her home.

The issue in this case is whether there is sufficient evidence to convict George of the offense of aggravated assault.

Section 45-5-202(1)(c), MCA, provides:

"(1)  A person commits the offense of aggravated assault if he purposely or knowingly causes:  (c) reasonable apprehension of serious bodily injury in another by use of a weapon."

Section 45-2-101(59), MCA, defines serious bodily injury as:

"bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement or protracted loss or impairment of the function or process of any bodily member or organ.  It includes serious mental illness or impairment."

Section 45-2-101(71), MCA, defines weapon as:  ". . . any instrument, article, or substance which, regardless of its primary function, is readily capable of being used to produce death or serious bodily injury."

George claims that McQuiston had no fear of him before the attack and therefore the element of "reasonable apprehension" could not have been proved at the trial. George relies on this Court's statement that:  "The 'reasonable apprehension' may be a response that the victim is not instantly aware of, but his actions may clearly show that he apprehends the reality of the attack."  State v. LaMere (1980), ____ Mont. ____, 621 P.2d 462, 464, 37 St.Rep. 1936, 1939.  George contends that in LaMere there were supporting facts regarding the defendant's menacing behavior and verbal threats that showed "reasonable apprehension." George contends that these factors are not present here and,

3

therefore, McQuiston could not have apprehended the "reality of the attack."

In LaMere, the defendant argued that the victim was not in fear until after the attack and therefore could not have been "reasonably apprehensive" as required under section 45-5-202, MCA. We upheld the conviction in that case stating: "But this Court has never held that a showing of immediate fear is the only way to prove 'reasonable apprehension.' We recognize that as in civil assault, 'apprehension' is not the same thing as fear, (cite omitted), and we also recognize that a victim may be put in a position, such as the victim testified to here, of being so startled, or shocked, or afraid, that his reaction is a delayed one." LaMere, 621 P.2d at 464, 37 St.Rep. at 1939.

Our decision in LaMere does not preclude a showing of immediate fear as a means of proving "reasonable apprehension." In the present case, McQuiston testified that when she saw the blade coming toward her she thought George was going to rape or kill her. George and McQuiston testified that she was afraid of George and noticeably upset after the incident. Her next door neighbor testified that McQuiston ran into her apartment sobbing and begged her to call the landlord. Her discussions with the police and the doctor in the emergency room indicated that she was "reasonably apprehensive" of serious bodily injury. There is, therefore, sufficient evidence to uphold the District Court's determination that McQuiston apprehended the reality of the attack.

George asserts McQuiston's apprehension was unreasonable because she was sensitive to encounters. He grounds this assertion on the facts that she was attacked one year before

4

this incident by another man and that later in the day, after the incident in question, she backed away from a teacher who was trying to approach her. McQuiston's previous attack does not preclude a finding that she was "reasonably apprehensive" of serious bodily injury in the altercation with George. The trier of fact had before him evidence of the prior attack as well as evidence that McQuiston had recovered from that attack. In addition, she allowed George into her apartment and had not shown any sign of unreasonable behavior.

McQuiston's behavior after the incident goes to show that she was still recovering from being struck earlier in the day. She may have been apprehensive of her teacher and this apprehension may have been unreasonable but that is not the question before us. We need only determine whether there was sufficient evidence presented at trial to show that McQuiston "reasonably apprehended" serious bodily injury with a weapon.

George claims the contusion suffered by McQuiston did not constitute serious bodily injury. Pursuant to section 45-5-202(1), MCA, there need only be "reasonable apprehension of serious bodily injury," serious bodily injury need not be sustained to convict a person of the offense of aggravated assault. This Court has held that: "It is only necessary that the evidence show that the weapon was used in such a manner at the time and place and on that victim so that serious bodily injury was capable of being inflicted." State v. Klemann (1981), ____ Mont. ___, 634 P.2d 632, 636, 38 St.Rep. 1627, 1631. There was sufficient evidence presented to allow the trier of fact to determine whether serious bodily injury was "capable of being inflicted."

5

George further claims that since McQuiston knew the knife was dull and was wearing a coat she could not have reasonably apprehended serious bodily injury. In conjunction with this argument, George asserts the knife could not have constituted a weapon because it was dull and the blade broke when he struck McQuiston. The knife, however, qualifies as a weapon if it is "readily capable of being used to produce serious bodily injury." Section 45-2-101(71), MCA. There was testimony that the knife was a "butcher knife." McQuiston testified that it was "somewhere between a butcher and paring knife" in size. A portion of the knife was introduced at trial.

There was sufficient evidence presented to allow a trier of fact to find that the knife was capable of being used to produce serious bodily injury. Therefore, McQuiston could have "reasonably apprehended" serious bodily injury with the use of the knife. It is not a compelling argument that the coat could have prevented injury or that the knife was too dull to produce serious injury.

George admits the attack took place and that he had the knife in his hand when he struck McQuiston:

"Q. Where did you hit her? A. Right there.

"Q. You are pointing to the center of your chest? A. The center of the chest. I hit her where I would not do any damage. It would knock her back.

"Q. You said you had the knife in your hand at the time that you hit her. A. Yes."

McQuiston testified that she was in fear of her life when attacked and that George made a life threatening statement after he hit her. George also testified that McQuiston was afraid.

A conviction cannot be overturned when the evidence, viewed in the light most favorable to the prosecution would allow _any_ rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed. 560, 573; State v. Godsey (1982), ___ Mont. ___, ___ P.2d ___, 39 St.Rep. 2354, 2358. If the record shows any substantial evidence to support the judgment, the presumption is in favor of such judgment. State v. Shurtliff (1981), ____ Mont. ____, 635 P.2d 1294, 1296, 38 St.Rep. 1798, 1800.

In the present case the evidence is clearly sufficient to sustain the court's conviction of the offense of aggravated assault.

Affirmed.

_____
                      Justice

We Concur:

_____

_____

_____

_____,
        Justices

7