No.   91-148

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

STATE OF MONTANA,

        plaintiff and Respondent,

    v.

LEO F. STAAT,

        Defendant and Appellant.

FILED

NOV 21 1991

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District court of the Fourth Judicial District,
               In and for the County of Ravalli,
               The Honorable Ed McLean, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

            Noel K. Larrivee (argued), Larrivee Law Office,
            Missoula, Montana

        For Respondent:

            Honorable Marc Racicot, Attorney General,
            Paul D. Johnson (argued), Assistant Attorney
            General, Mark Murphy, Assistant Attorney
            General, Helena, Montana: George Corn, Ravalli
            County Attorney, Hamilton, Montana


                            Submitted:  October 23, 1991

                            Decided:   November 21, 1991

Filed:


                    _____
                              Clerk

Justice William **E.** Hunt, Sr., delivered the opinion of the Court.

Appellant Leo *G.* Staat appeals from a jury verdict and trial court orders of the Fourth Judicial District Court, Ravalli County, finding appellant guilty of the offense of tampering with or fabricating evidence in violation of § 45-7-207**(1)**(a)**, MCA (1989),** a felony.

We affirm.

Appellant raises five issues on appeal.

**1.** Whether the District Court erred in denying appellant's motion to suppress a confession made after a polygraph examination on the grounds that plaintiff's police officers' expressed or implied conduct resulted in a "custodial interrogation."

2. Whether the District Court erred in overruling appellant's objection to plaintiff's Exhibit No. 5, which consisted of a secretly taped interrogation in appellant's home, violating appellant's right to privacy under Mont. Const. art. II, § 10, and appellant's right to be free from unreasonable searches and seizures under Mont. Const. art. **11, § 11.**

**3.** Whether the District Court erred in allowing a conviction without any evidence of the offense charged other than appellant's confession.

**4.** Whether the District Court erred by not directing a verdict for appellant based on plaintiff's failure to offer sufficient evidence proving the necessary mental state for the crime charged.

5.    Whether the District Court erred in denying appellant's motion for a new trial on grounds that the prosecutor made inflammatory remarks during closing argument which were not supported by the record, thereby prejudicing appellant's right to a fair trial.

On the morning of December 16, **1989,** appellant discovered the body of a close friend, Mary Higgins, at her residence in Stevensville.  She had been the victim of a deliberate homicide.  On the kitchen table, appellant discovered a note addressed to him by the victim.   According to appellant, the note stated "[s]weetheart, I'm out for a walk, wait for me to come back."  Appellant picked up the note and destroyed it.   Appellant then notified the police from a local drug store about the killing.  A full-scale police investigation was quickly launched.

The police questioned appellant on at least five separate occasions.  The first occurred on December 16, **1989,** in a police vehicle at the scene of the crime.  Detective Maus interviewed appellant concerning the discovery of the body.  Because the police discovered footprints and tire tracks left in the snow, appellant's shoes and car tires were photographed.  This evidence indicated that appellant drove up to the victim's house and walked to her door twice before notifying the police.

Appellant was questioned at his residence by police officers on December 26, **1989,** January **2, 1990,** and on January 12, **1990.**  At the conclusion of the January 12, **1989,** interrogation, Detective

Horsfall requested that appellant submit to a polygraph examination. At first, appellant declined, but after repeated requests by the detective, appellant consented.

Throughout these interrogations the police secretly recorded their conversations with appellant by hiding a microphone in an officer's lapel. Appellant was unaware that he was being taped during these interrogations.

On the evening of January 16, 1990, a polygraph examination was conducted upon appellant in the basement of the Ravalli County Sheriff's Office. The entire examination lasted approximately four hours. After the polygraph, the police, dressed in plain clothes, began interrogating appellant. It was at that time that appellant confessed to reentering the victim's house and taking and destroying the note. At no time throughout the investigation, and specifically not before, during, or after the polygraph examination, did the police read appellant the Miranda warning. Two months later appellant was arrested and charged with tampering with or fabricating evidence in violation of § 45-7-207(1)(a), MCA (1989).

On September 5, 1990, appellant filed a motion to suppress the statements he had made to investigating officers following the polygraph examination because he was never given a Miranda warning. On October 25, 1990, a suppression hearing was held. The District Court denied the motion on November 19, 1990. On November 26, 1990, a jury trial commenced. The trial concluded the following

4

day with the jury finding appellant guilty. On December 10, 1990, appellant moved for a new trial which was denied by the District Court. Appellant was given a three year deferred sentence. Notice of appeal was timely filed on January 24, 1991.

I

Whether the District Court erred in denying appellant's motion to suppress on the grounds that plaintiff's police officers' expressed or implied conduct resulted in a "custodial interrogation."

The United States Supreme Court has ruled that states may not use confessions or admissions resulting from "custodial interrogation" unless the proper Miranda warnings have been given. Miranda **v.** Arizona (1965), 384 **U.S.** 436, 444, 86 S.Ct. 1602, **1612,** 16 L.Ed.2d 694, 706. The Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 **U.S.** at 444. Before determining whether the police should have given the appellant the Miranda warning, we must first determine whether there was "custodial interrogation."

This Court has established the following guidelines to determine what constitutes "custodial interrogation." If a person has no free right to leave, then the interrogation is custodial. State v. Ellinger (1986), **223** Mont. 349, 355, 725 P.2d 1201, **1204.** "Custodial interrogation" can result from the expressed or implied

5

conduct of police officers. State v. Osteen (1985), 216 Mont. 258, 265, 700 P.2d 188, 193. This Court looks to whether a "reasonable person" would not feel free to leave and has used six factors to determine "custodial interrogation."

> [P]lace of interrogation, the time of interrogation, persons present during interrogation, whether Miranda warnings were gratuitously given, the length and mood of interrogation, and whether or not the suspect was arrested following questioning.

State v. Lapp (1983), 202 Mont. 327, 331, 658 P.2d 400, 403.

Even though a suspect is questioned by police officers in a station house, the interrogation is not necessarily custodial unless there is a significant restriction of personal liberty. State v. Dannels (1987), 226 Mont. 80, 87, 734 P.2d 188, 193.

> "Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody.""

Dannels, 734 P.2d at 193 (quoting Oregon v. Mathiason (1977), 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714, 719).

Miranda warnings might not be required even when a person is the focus of the investigation. Dannels, 734 P.2d at 190-91. The determination of what constitutes "custodial interrogation" is made on a case-by-case analysis.

6

In this case, the facts and circumstances did not rise to the level of "custodial interrogation." Appellant stated he was unconcerned about taking a polygraph. He volunteered to take the polygraph and drove to the sheriff's office without a police escort. The police did not threaten appellant with arrest, nor was he ordered to take the polygraph. Appellant was not placed under arrest either before or after the polygraph examination. After the post-polygraph interview, he was free to leave. None of the officers involved with the examination were in uniform. Toward the end of questioning, the record reflects that the appellant and the officers were joking and making idle conversation. After the examination, appellant went home. Moreover, the purpose of the polygraph examination was to develop information regarding the Higgins homicide, not to find information about tampering with the evidence. We have noted our extreme displeasure with the use of polygraph examinations and results in criminal trials and forbade their use in any proceeding in a court of law in Montana. State v. Staat (Mont. 1991), 811 P.2d 1261, 1262, 48 St.Rep. 331. We hold that in this case, and under these facts, the District Court did not err in allowing appellant's confession into evidence.

## II

Whether the District Court erred in overruling appellant's objection to plaintiff's Exhibit No. 5, which consisted of a secretly taped interrogation in appellant's home, violating appellant's right to privacy under Mont. Const. art. 11, § 10, and

appellant's right to be free from unreasonable searches and seizures under Mont. Const. art. 11, § 11.

In State v. Brown (1988), 232 Mont. 1, 755 P.2d 1364, the majority of this Court held:

> [T]hat warrantless consensual electronic monitoring of face-to-face conversations by the use of a body wire transmitting device, performed by law enforcement officers while pursuing their official duties, does not violate the right to be free of unreasonable searches and seizures nor the privacy section of the Montana Constitution.

Brown, 755 P.2d at 1369.

All that is required is that one party to the conversation clearly consent to the monitoring and that the consent be "freely made and without compulsion." Brown, 755 P.2d at 1369. The consent may be given by a police officer or an informant. Brown, 755 P.2d at 1369. Evidence obtained in this manner is admissible in a criminal trial. We hold that the District Court did not err in failing to suppress Exhibit No. 5.

### III

Whether the District Court erred in allowing a conviction without any evidence of the offense charged other than appellant's confession.

Appellant's third issue on appeal is that appellant cannot be convicted solely on the basis of his extrajudicial confession. Section 46-20-104(4), MCA (1989), states that failure to make a timely objection constitutes a waiver of the objection. The record does not show that defense counsel made an objection on corpus

8

delicti grounds, and he does not assert any of the exceptions listed in § 46-20-701(2), MCA (1989).

In addition, at the suppression hearing appellant admitted to taking the note. A confession in criminal law is a voluntary statement made by a person charged with a crime acknowledging himself to be guilty of the offense charged. Black's Law Dictionary 369 (4th ed. rev. 1968). A judicial confession is made before a magistrate or court during the course of the legal proceedings. Black's Law Dictionary 369 (4th ed. rev. 1968). The prosecution directly asked appellant whether he had taken the note. The appellant answered yes. This amounted to a judicial confession and no independent corroboration is required. 7 *Wigmore* on Evidence § 2071 (Chadbourn Rev. 1978).

## IV

Whether the District Court erred by not directing a verdict for appellant based on plaintiff's failure to offer sufficient evidence proving the necessary mental state for the crime charged.

Section 45-7-207, MCA (1989), states in pertinent part:

(1) A person commits the offense of tampering with or fabricating physical evidence if, believing that an official proceeding or investigation is pending or about to be instituted, he:
(a) alters, destroys, conceals, or removes any record, document, or thing with purpose to impair its verity or availability in such a proceeding or investigation . . . .

9

A person acts "with purpose" "if it is his conscious object to engage in that conduct or to cause that result."  Section 45-2-101(58), **MCA** (1989).

Defense counsel admits appellant believed that an investigation was about to begin, and that appellant destroyed the note.  However, appellant argues that he acted with the purpose of avoiding unfavorable comment by the news media toward the victim, not to <u>impair</u> the investigation.  We disagree.

The compiler's comments to § 45-7-207, **MCA** (1989), state that all that is required is that the accused believe an official proceeding or investigation is pending or imminent and that he act with the purpose of impairing the availability or verity of the physical evidence.

The record reflects appellant knew a serious crime had been committed.  He failed to notify the police until after he had destroyed the note.  Although his ostensible reason for removing and destroying the note may have been to protect the victim's reputation, his purpose was to prevent the note's discovery during the homicide investigation that he realized would follow his report of the crime.  For example, when asked why he took the note, appellant stated "[i]t goes back quite a while -- I dealt with law enforcement here."  This suggests that the appellant's conscious object was to make the note unavailable to police officials thereby impairing the investigation.

We will not overturn a conviction when the evidence in light most favorable to the state "would allow *any* rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." State v. George (1983), 203 Mont. 124, 130, 660 P.2d 97, 100 [emphasis in original]. We hold there was sufficient evidence on the record for the jury to find that the appellant acted with the purpose of impairing the homicide investigation beyond a reasonable doubt.

V

Whether the District Court erred in denying appellant's motion for a new trial on grounds that the prosecutor made inflammatory remarks during closing argument, which were not supported by the record, thereby prejudicing appellant's right to a fair trial.

Appellant contends the State made certain comments concerning the nature of the Higgins homicide which inflamed the jury and denied appellant's right to a fair trial. Defense counsel moved for a new trial partially upon this basis.

Section 46-16-702(1), MCA (1989), states a motion for a new trial may be granted by a district court "if required in the interest of justice." The decision is left to the sound discretion of the trial court judge. Absent an abuse of discretion, denial of a motion for a new trial will not be disturbed on appeal. State v. Rose (1980), 187 Mont. 74, 83, 608 P.2d 1074, 1079.

A prosecutor may comment on the following during closing argument:

11

"[T]he gravity of the crime charged, the volume of evidence, credibility of witnesses, inferences to be drawn from various phases of evidence, and legal principles involved, to be presented in instructions to the jury . . . ."

State v. Dupre (1982), 200 Mont. 165, 175, 650 P.2d 1381, 1386 (quoting State v. Thompson (1978), 176 Mont. 150, 157, 576 P.2d 1105, 1109). An appellant must also allege that the prejudicial prosecutorial conduct resulted in a substantial right being denied. State v. Nichols (1987), 225 Mont. 438, 448, 734 P.2d 170, 176.

The record shows defense counsel made only one objection during the State's closing argument on the grounds that the evidence referred to, i.e., three fingerprints, was not in the record. Where the party opposes the admission of evidence and the trial court sustains the objection, strikes the evidence from the record, and instructs the jury to disregard the evidence, "'error committed by its introduction is presumed cured.'" State v. Seaman (1984), 236 Mont. 466, 476, 771 P.2d 950, 956 (quoting State v. Brush (1987), 228 Mont. 247, 251, 741 P.2d 1333, 1335). The trial judge gave a curative instruction and admonished the jury. This cured the error.

Because this case involved tampering with evidence of a homicide investigation, it was proper for the State, during closing argument, to comment on the seriousness of the crime being investigated and the importance of preserving the criminal scene exactly the way the appellant found it. We hold that the comments made by the State did not deny the appellant's right to a fair

12

trial and that the District Court did not abuse its discretion in not granting a new trial.

We affirm.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

13

Justice Terry N. Trieweiler specially concurring.

I concur with the result of the majority's opinion. However, I do not agree with all of the majority's conclusions.

I specifically disagree with the conclusion that the government may send an agent into a private citizen's home and secretly tape-record a conversation with that citizen without his knowledge or permission, and without a duly issued warrant.

I do not agree with the majority's conclusion that a person's privacy can be invaded to that extent without violating Mont. Const. art. 11, § 10.

I agree with this Court's prior decision in *State v. Brackman* (1978), 178 Mont. 105, 582 P.2d 1216, and Justice Hunt's dissent in *State v. Brown* (1988), 232 Mont. 1, 755 P.2d 1364, wherein he made the following observation regarding the right to privacy in Montana:

> The majority feels constrained by the decisions of the United States Supreme Court. But this state, through the adoption of the right to privacy provision of our state constitution, has elected to give Montana citizens even greater guarantees of privacy than the federal constitution gives. Why the majority chooses to ignore this explicit guarantee puzzles me. . . .
>
> . . . .
>
> The decision made today is indeed a sad one for the citizens of the state of Montana. The majority may have unwittingly opened the doors for the erosion of any protection the privacy clause gives individuals of this state. The result may be required by the current posture of federal law but it certainly was not intended by the framers of our state constitution.

*Brown*, 755 P.2d at 1372 (Hunt, J., dissenting).

14

Even though I conclude that the secretly taped conversation of the defendant in his own home violated his constitutional right to privacy under our State Constitution, I would affirm his conviction. Section 46-20-701(2), MCA, provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."

I read the entire transcript of the conversation that was secretly recorded in the defendant's home. It is basically an innocuous conversation during which the defendant and his wife were asked to submit to a polygraph examination. There were no remarks which reflected in any way on the defendant's guilt or innocence.

Therefore, even though I would exclude the results of a secretly taped conversation in a person's home, I conclude that there was no prejudice to the defendant from the admission of this statement in this case.

For these reasons, I concur in the majority's decision to affirm the judgment of the District Court.

_____
Justice

15

November 21, 1991

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

NOEL K. LARRIVEE
Larrivee **Law** Office
**334** E. Broadway
Missoula, MT  59802

Hon. Marc Racicot, Attorney General
Paul Johnson, Asst. Atty. Gen.
Justice Building
Helena, MT  59620

George Corn
County Attorney
Ravalli County Courthouse, Box 5008
Hamilton, MT  59840

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy