NO. 94-118

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STATE OF MONTANA,

       Plaintiff and Respondent,

  v.

ROBERT A. MEYERS,

       Defendant and Appellant.

**FILED**

AUG 04 1995

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

          Bethany F. Schendel, Attorney at Law, Great Falls,
Montana

       For Respondent:

          Hon. Joseph P. Mazurek, Attorney General; Barbara C.
Harris, Assistant Attorney General, Helena, Montana

          Brant Light, County Attorney; Michael Fanning,
Deputy County Attorney, Great Falls, Montana

Submitted on Briefs:  May 12, 1995

Decided:  August 4, 1995

Filed:

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from a jury verdict in the Eighth Judicial District Court, Cascade County. We affirm.

The following are the dispositive issues:

I. Was the jury verdict supported by sufficient evidence?

II. Did the prosecutor make improper remarks during his closing argument such as to necessitate a new trial?

Shelly Migneault (Shelly) testified as follows at the trial: On April 15, 1993, Shelly returned from the restaurant where she worked as a waitress at approximately 3:30 a.m. After she returned home, she turned on the kitchen light, a lamp, the television, and the VCR. She then changed her clothes and returned to the living room, where she heard snoring. She looked around and found that someone was lying behind her couch asleep. Shelly grabbed her purse and keys and drove to a nearby grocery store where she called 911. Two officers met her at the store and drove back to her apartment with her. Shelly described the layout of the apartment and trailed behind the officers until she heard a scuffle begin, at which time she ran out of the apartment

The testimony of officers John Catlett (Catlett) and Paul Smith (Smith) established the following: Catlett and Smith entered Shelly's apartment, walked through the kitchen and dining area, and into the living room. Catlett, who went first, did not see anyone in the living room, but as he walked around the couch, Robert A. Meyers (Meyers) sprang up. At about this time, Smith was approaching the couch. Meyers lunged at Smith, overturning the

2

couch in the process. As Smith struggled with Meyers, Catlett attempted to assist Smith in getting control of Meyers. Meyers struggled to free himself.

After Catlett told Meyers to stop struggling, he noticed a wooden screwdriver handle protruding from Meyers' pocket. Catlett called for additional assistance on his radio and continued to restrain Meyers. Finally, Catlett threatened to use his pepper mace on Meyers and Meyers settled down so that he could be handcuffed.

The testimony established that an investigation at the scene showed that all windows and both doors had pry marks on them that matched the screwdriver found in Meyers' pocket. The marks had not been on the windows and doors before the incident.

Smith testified at trial that Meyers grabbed his face first, after lunging across the couch. Smith sustained cuts and abrasions to the face and strained his back in the struggle with Meyers. Meyers testified that he did not remember anything from the time he smoked a marijuana cigarette with a friend until he woke up behind Shelly's couch. Meyers, who had been living with his brother for several weeks, also testified that his brother lived next door to Shelly but that he had never seen her. Meyers stated that when he woke up he did not know where he was and all he wanted to do was get out. He said he remembers falling into someone and wrestling to get free, but he was not aware that they were police. He said that he stopped struggling when he heard the threat about mace.

Although Meyers was originally given a citation for resisting arrest, he was charged by information with felony assault pursuant to § 45-5-202, MCA, criminal mischief, a misdemeanor, pursuant to § 45-6-101, MCA, and criminal trespass to property, a misdemeanor, pursuant to § 45-6-203, MCA. On August 23 and 24, 1993, he was tried in the Eighth Judicial District Court, Cascade County, and found guilty on all three counts.

On November 12, 1993, Meyers was sentenced to ten years in the Montana State Prison for felony assault and six months in the Cascade County Jail for the charges of criminal mischief and trespass to property misdemeanors. The jail **time was to run** concurrently with the prison **time** and numerous parole conditions were imposed.

Meyers appeals his conviction.

I.

Was the jury verdict supported by sufficient evidence?

Meyers contends that there were significant contradictions in the testimony of the two officers and that there was not sufficient evidence presented at trial to convict him. As a result he contends that his motion for judgment notwithstanding the verdict (JNOV) should have been granted by the District Court.

The record indicates that after the State's case-in-chief, Meyers moved the court to dismiss the charges against Meyers because the State had not presented enough evidence to support a prima facie case of felony assault or misdemeanor criminal mischief. The record also shows that following the jury verdict,

4

**counsel** for Meyers asked the court to "overturn" the verdict. At no time did counsel ask for a JNOV or, more appropriately, a directed verdict.

In the course of trial, defense counsel did contend there was a lack of sufficient evidence. A directed verdict is appropriate only where there is no evidence upon which the trier of fact could base a guilty verdict. State v. Henderson (1994), 265 Mont. 454, 877 P.2d 1013.

At trial, counsel also argued to the court that the State had not presented a prima facie case. This Court will overturn a verdict only when after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt. State v. Arlington (1994), 265 Mont. 127, 875 P.2d 307.

A felony assault will be found when a person "purposely or knowingly causes bodily injury to . a peace officer." Section 45-5-202, MCA. While Meyers testified that he did not know who the men were in the room, both officers testified that Meyers came across the couch at Smith. It was the jury's responsibility to sort through any inconsistencies in the officers' stories and Meyers' story. Once evidence is admitted, it is the trier of fact that has the duty to weigh it and decide which parts it finds credible. State v. Gollehon (1993), 262 Mont. 1, 864 P.2d 249.

Smith testified that Meyers "lunged" at him and grabbed at his face. Meyers' own testimony reveals that his only thought was that he had to defend himself because he thought he was going to get

5

beat up. He stated that he had to get out of there. When Officer Smith's testimony is added to Meyers' testimony and officer Catlett's testimony that it took two officers to subdue Meyers, the record shows that substantial evidence exists to demonstrate that the essential elements of felony assault had been committed.

Further, both officers were in uniform. When asked about his recognition of this fact, Meyers' only reply was that all he knew was that he had to get out of there because two guys were going to beat him up.

A person need not form the specific intent to commit a crime or intend the result that occurred to be found guilty of knowingly committing a crime. State v. Blalock (1988), 232 Mont. 223, 756 P.2d 454. It was obvious from Meyers' testimony that he intended to do what he had to in order to escape.

We conclude that any rational trier of fact could have found the essential elements of the crimes of which Meyers was convicted beyond a reasonable doubt. We hold the District Court was correct in refusing to direct a verdict.

## II

Did the prosecutor make improper remarks during his closing argument such as to necessitate a new trial?

Meyers argues that the State made insinuations during closing statements that Meyers intended harm to Shelly and that because these allegations were not founded on any kind of evidence introduced at trial, the verdict should be reversed. The State

replies that it did nothing but react to statements made during Meyers' concluding comments.

Counsel for Meyers argued to the jury during closing arguments:

> And when the judge instructs you as to what you're not supposed to do, sentiment, conjecture, sympathy, you have to remember in that regards what the defendant is not charged with and what is not an issue here in this case. He is not charged with committing or attempting to commit any crime of violence against Shelly Migneault. With all due respect, he's not charged with that, is he?

The State then made the following comments during its closing argument:

> The defense attorney also said, for example, that of things that are not shown that the defendant was not charged with a crime of violence against Shelly Migneault. But comments like that can only do one thing, raise a question in your mind as to what the defendant was doing there in the first place. Do we have proof as to why he was there? No. We don't have proof as to why he was there.
>
> But in the Court's instructions, as you recall, the Court stated that you can use your common sense, and you can infer from the defendant's acts what his intent was.

In State v. Staat (1991), 251 Mont. 1, 822 P.2d 643, we held that a prosecutor may comment on inferences to be drawn from various phases of evidence. However, we conclude that the prosecution's statement that the jury could use its common sense to infer from the defendant's acts what his intent was with regard to Shelly Migneault was not appropriate.

Appellant must show that prosecutorial misconduct worked to deprive him of his rights. Staat 251 Mont. at 10, 822 P.2d at 648. There is no evidence presented to show that such was the case. While the State's use of first person singular in several

7

statements is unfortunate, the references to what counsel thinks is irrelevant. The record indicates that the court correctly instructed the jury of its responsibility.

While such personalized statements of counsel are inappropriate, they do not automatically work to deprive Meyers of his rights. Meyers had the responsibility to produce evidence that the comments by opposing counsel worked to prejudice him. Without proof of such prejudice, mere allegations are inadequate to warrant a new trial. State v. Campbell (1990), 241 Mont. 323, 787 P.2d 329. Meyers failed to present any evidence to demonstrate prejudice.

While the prosecutor should have chosen more appropriate language, we conclude that his remarks to the jury do not necessitate a new trial.

Pursuant to Section I, Paragraph 3 (c), Montana Supreme Court 1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of this Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

Affirmed.

_____
Justice

8

we concur:

_____
Chief Justice

_____

_____

_____
Justices

August 4, 1995

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

BETHANY F. SCHENDEL
Attorney at Law
600 Central Plaza, Ste. 18
Great Falls, MT 59401

Hon. Joseph Mazurek
Attorney General
Justice Bldg.
Helena, MT 59620

Brant Light, County Attorney
Michael Fanning, Deputy
Cascade County Courthouse
Great Falls, MT 59401

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _A. Gallagher_
Deputy