No. 84-516

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

STATE OF MONTANA,

Plaintiff and Appellant,

-vs-

NARVIN E. OSTEEN,

Defendant and Respondent.

_____

APPEAL FROM: District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Robert M. Holter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Hon. Mike Greely, Attorney General, Helena, Montana
William A. Douglas,(Susan Loehn, Deputy), County
Attorney, Libby, Montana

For Respondent:

Law Office of David W. Harman, Libby, Montana

_____

Submitted on Briefs: Jan. 18, 1985

Decided: May 30, 1985

Filed: MAY 30 1985

*Ethel M. Harrison*

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The State of Montana appeals from an order of the Lincoln County District Court suppressing evidence seized after officers entered the defendant's home without a warrant and also suppressing defendant's statements made prior to receiving a _Miranda_ warning. We affirm.

The issues are:

1. Did the District Court err in suppressing evidence seized after officers entered defendant's home without a warrant?

2. Did the District Court err in suppressing defendant's statements made prior to receiving _Miranda_ warnings?

Around 10:15 p.m. on April 6, 1984, a man reported to the Lincoln County Sheriff's Office that he had been assaulted. He reported that the driver of a Lincoln Continental automobile with license plates bearing the name "Osteen" had pointed a handgun at him and threatened him. The victim stated he did not know the driver, but had followed the car to a house where it was parked.

Sheriff's officers interviewed the victim at the Sheriff's Office a short time later. The victim agreed to show the officers where the vehicle was parked. He gave the officers the following information about the suspect: the suspect's vehicle was a grey Lincoln Continental; the vehicle bore the personalized license plates "Osteen;" the suspect was male, 40-50 years old and had greying hair.

The victim led three officers to the house where he had seen the suspect's vehicle parked. The car was in the driveway when they arrived. The house had a sign on the outside which read "Osteen." While the victim and one officer waited across the street in a patrol car, two armed and uniformed officers approached the house. One officer looked through

the windows of the Lincoln and saw a pistol ammunition box on the rear floor.

Without an arrest or search warrant, the two officers went to the front porch of the house and knocked on the door. The defendant testified that the officers did not announce themselves but began banging loudly on the door. This was around 10:40 p.m. and it was dark outside. Defendant testified he had been asleep for about one hour. He was wearing his bathrobe when he came to the door. One officer testified they told defendant, "We would like to talk to you, we are from the Sheriff's Office" and the defendant replied, "Come on in." The defendant testified that when he opened the front door, the officers simply came all the way into his living room without any invitation by word or gesture.

One officer testified that the defendant had been drinking, was upset and did not appear to understand what the officers were doing. The defendant testified he had been sound asleep and that when he went to the door, he was "still asleep, very sleepy." He testified he had no idea why the officers were there, but thought maybe someone had died. The officers did not tell defendant he had a right to refuse them entry.

After the officers entered defendant's living room, they saw a pistol lying on a table next to the couch. This gun was not visible from the front door. One officer then began questioning the defendant. The officer asked defendant where he had been that evening and whether he had been at a specific location. The defendant said he had not been there and could not tell them where he had been or what he had been doing. The officer asked defendant if the pistol was his and whether he had had it with him that night. The defendant replied the pistol was his, that he kept it in the house for

3

protection and never took it outside the house. After further questioning, the defendant admitted he had been out in his car that evening and that he had the handgun with him. After eliciting these admissions, the officer arrested defendant and read him the Miranda warnings. The officer told him to get dressed to go to the Sheriff's Office, followed him to his room, watched him while he dressed, then handcuffed him and took him to the patrol car.

The defendant was charged with aggravated assault under § 45-5-202, MCA. The defendant pled not guilty and filed a motion to suppress evidence of the weapon found in his home and the statements made in response to the officer's questioning. The District Court held a suppression hearing and granted the motion to suppress. The State appeals.

I

Did the District Court err in suppressing evidence seized after officers entered defendant's home without a warrant?

The State argues in substance that the Sheriff's officers acted reasonably in entering defendant's house without a warrant. The State contends that the officers lacked probable cause to believe defendant committed an offense until they found the weapon in his home and he admitted the weapon was in his car with him that night. The State argues the officers were merely investigating a reported offense, that they did not know the identity of the suspect, that they did not want to accuse the defendant prematurely, and that they did not intend to arrest the defendant when they went to the door of the house. The State contends that the defendant voluntarily admitted the officers, that the officers were properly within the defendant's home when they saw the weapon, and that seizure of the weapon was proper under the plain

4

view exception to the warrant requirement. The State therefore argues that the District Court erred in suppressing the weapon seized from defendant's home.

Under certain circumstances, peace officers may seize evidence in plain view without a warrant. State v. Sorenson (1979), 180 Mont. 269, 272, 590 P.2d 136, 139. The plain view doctrine may be relied on if two threshold requirements are met: the officers must have a prior justification for the intrusion and the incriminating evidence must be discovered inadvertently in the course of the justified intrusion. Sorenson, 180 Mont. at 272, 590 P.2d at 139.

The officers' initial intrusion in this case was not under authority of a warrant. Thus, the intrusion must be justified under one of the recognized exceptions to the Fourth Amendment's warrant requirement. "Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment - subject only to a few specifically established and well-delineated exceptions." Katz v. United States (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576. Those exceptions are "jealously and carefully drawn," and those seeking an exemption from the warrant requirement have the burden of showing "that the exigencies of the situation made that course imperative." Sorenson, 180 Mont. at 273, 590 P.2d at 139, citing Coolidge v. New Hampshire (1971), 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, reh. den. 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120.

Here, the State seeks to justify the initial intrusion into defendant's home under the consent exception to the warrant requirement. The State contends that the officers' entry was proper because the defendant invited them into his home.

5

The District Court found as follows:

"Here, we find these factors:

"(1) Uniformed, armed officers appeared at the door of defendant's private home at night and sought entrance.

"(2) Defendant felt a compulsion to let them in.

"(3) The purpose of the intrusion was not apparent, he thought maybe someone had died.

"(4) The defendant was just aroused from sleep by the officers.

"(5) Defendant previously had consumed liquor and was upset.

"And, whether there was a 'come in' or just holding aside the door or whatever under these circumstances, the entry was not proper."

In order to show that voluntary consent to search was given, the State must show that the consent was unequivocal, specific, and uncontaminated by duress or coercion. The Court discussed consent at some length in State v. LaFlamme (1976), 170 Mont. 202, 204-05, 551 P.2d 1011, 1012-13, where we stated:

". . . There is a heavy burden of proof required to show that there was a consent. The United States Supreme Court in Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797, 802, set forth the basic requirement:

"'When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. * * *'

"The Ninth Circuit Court of Appeals gives a more elaborate statement of this requirement in Channel v. United States, 285 F.2d 217, 219 (1960), saying:

"'A search and seizure may be made without a search warrant if the individual freely and intelligently gives his unequivocal and specific consent to search, uncontaminated by any duress or coercion, actual or implied. The Government has

the burden of proving by clear positive evidence that such consent was given.'

". . .

"The question to be answered in this case is whether the words and actions of the defendant were such that a freely given, unequivocal, and specific consent is shown by clear positive evidence."

In examining the surrounding circumstances, we must consider any subtly coercive police actions and questions as well as the vulnerable subjective state of the person alleged to have consented. The testimony on the part of the defendant and the officers supports the District Court's conclusion that the defendant felt a compulsion to let them in. Their testimony also supports the court's conclusion that the purpose of the intrusion was not apparent, especially since defendant had just been aroused from sleep after having consumed some liquor. There is clearly sufficient evidence to support the conclusion that there was not a specific consent to search and that there was coercion, either actual or implied.

We point out that the officers in this case had ample grounds and opportunity to obtain a warrant before seeking entry to defendant's home. There is no indication in the record that to have done so would have in any way impaired the effectiveness of their investigation. As we reiterated in State v. Kao (Mont. 1985), 697 P.2d 903, 907-08, 42 St.Rep. 356, 360-61:

"The Fourth Amendment to the United States Constitution and Article II, section 11 of the Montana Constitution provide for the right of the people to be secure in their persons, papers, homes and effects from unreasonable searches and seizures. . . .

"The physical invasion of the home is the chief evil to which the Fourth Amendment is historically directed.

7

> "'In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.' Pryton v. New York (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639.
>
> ". . . [T]he fact that an entry is made at night raises particular concern over its reasonableness. Although crime has become an increasingly serious problem, . . . the right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance."

Here, the officers failed to obtain a warrant and the State has failed to demonstrate any other valid basis for the officers' entry into defendant's home.

We conclude there was no consent given under the standard set forth in LaFlamme, and that there was no justification or exigency allowing a warrantless entry into the defendant's home. The officers' entry under the facts of this case was unreasonable and their observation of the weapon was an unreasonable, warrantless search. We therefore reject the State's argument that the weapon seized by the officer is admissible under the plain view exception to the warrant requirement.

We hold that the District Court did not err in suppressing evidence seized after the officers entered defendant's home without a warrant.

## II

Did the District Court err in suppressing defendant's statements made prior to receiving Miranda warnings?

After entering defendant's home without a warrant or other authorization and finding defendant's weapon, the officers interrogated the defendant at some length without

8

giving _Miranda_ warnings. In the course of this interrogation, the officers elicited incriminating admissions from the defendant regarding the weapon, the vehicle and defendant's activities that night. The District Court concluded that the interrogation was done in a custodial atmosphere and ordered suppression of defendant's statements made during this interrogation. We find the record contains substantial credible evidence to support the District Court's conclusion.

Custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." State v. Lapp (Mont. 1983), 658 P.2d 400, 402, 40 St.Rep. 120, 122, quoting Miranda v. Arizona (1966), 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (emphasis in _Lapp_). As the State contends, an interrogation becomes custodial and is subject to _Miranda_ requirements if the circumstances in which the interrogation takes place are such that a reasonable person being interrogated would feel he was in custody or otherwise significantly deprived of his freedom. _Lapp_, 658 P.2d at 403, 40 St.Rep. at 123. The State argues under this standard that the interrogation in this case was not custodial and that _Miranda_ warnings were not required. We disagree.

Courts consider a number of factors in determining whether a suspect is in custody or has been significantly deprived of his freedom of action for purposes of _Miranda_ warnings. These factors include the place of interrogation, the time of interrogation, persons present during interrogation, whether _Miranda_ warnings were gratuitously given, and whether or not the suspect was arrested following questioning. _Lapp_, 658 P.2d at 403, 40 St.Rep. at 122. It is not necessary that interrogation occur at the police station in

9

order to invoke the <u>Miranda</u> requirements. Interrogation which occurs in the suspect's home is subject to <u>Miranda</u> where it occurs in a coercive environment in which the suspect's freedom of action has been significantly restricted. State v. Ryan (1979), 182 Mont. 130, 133-35, 595 P.2d 1146, 1147-48; Orozco v. Texas (1969), 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311.

Here, two armed and uniformed police officers appeared at defendant's door at night and sought entry. Meanwhile, another officer and the alleged victim waited in a vehicle outside defendant's home. The two officers entered defendant's home without a warrant or other authorization, and began to interrogate the defendant regarding the weapon, his vehicle and his activities that night. The defendant was alone in his home at the time. The questioning apparently exceeded ten minutes in length. The officers repeated their questioning until receiving satisfactory answers. Both officers testified that, at first, the defendant denied having the gun in his car that night. After additional questioning, the defendant admitted the gun was with him in the car and he was formally arrested. These facts establish that the defendant was significantly deprived of his freedom of action.

The State attempts to characterize the officers' visit and questioning as a general investigative inquiry. The record establishes that prior to actually knocking at the door, the officers had been given a description of the suspect and his weapon, the suspect's vehicle and its license plate. The officers were led by the victim to the home, which was identified by the same name as that which appeared on the license plate. The vehicle was in the driveway and the officers observed a pistol ammunition box inside the

vehicle. At this point, the officers clearly had sufficient information to obtain a search or arrest warrant.

We conclude that the record contains substantial credible evidence to support the District Court's conclusion that the defendant was interrogated in a custodial atmosphere requiring Miranda warnings. The failure of the officers to preface their questions with Miranda warnings renders inadmissible the defendant's statements made during that interrogation.

We hold that the District Court correctly suppressed defendant's statements made prior to receiving the Miranda warning.

The District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices