No. 93-498

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

RICHARD T. RUSHTON,

      Defendant and Appellant.

FILED

MAR 22 1994

Ed
CLERK OF SU...
STATE OF ...

APPEAL FROM:  District Court of the Twenty-first Judicial District,
In and for the County of Ravalli,
The Honorable Jeffrey H. Langton, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Michael J. Sherwood, Attorney at Law,
          Missoula, Montana

      For Respondent:

          Hon. Joseph P. Mazurek, Attorney General,
          Kathy Seeley, Assistant Attorney General,
          Helena, Montana

          George Corn, Ravalli County Attorney,
          Hamilton, Montana


Submitted on Briefs:  January 13, 1994

Decided:  March 22, 1994

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Defendant Richard T. Rushton was charged by information in the District Court for the Twenty-first Judicial District in Ravalli County with criminal possession of dangerous drugs, a felony, in violation of § 45-9-102, MCA. On March 30, 1993, the District Court denied defendant's motion to suppress statements made and evidence obtained in a search of his residence. After this Court denied supervisory control, defendant entered a plea of guilty on the condition that he be allowed to appeal the District Court's denial of his motion to suppress. This appeal followed.

We reverse the order of the District Court.

The following issues are presented by defendant on appeal:

1. Did the District Court err when it denied defendant's motion to suppress evidence of statements made prior to the time defendant was given *Miranda* warnings?

2. Did the District Court err when it denied defendant's motion to suppress evidence seized during an unwarranted search of his residence?

Defendant Richard Rushton and his wife, Susan, live in a semi-rural area outside of Florence, Montana. At the time of the incident giving rise to this appeal, both were employed as teachers in the Corvallis school system. They have no children.

The Rushtons were friends with Timothy and Pamela Hammond, also of Florence. On December 9, 1992, the Hammond's 12-year-old son informed the Ravalli County Sheriff's Office that his parents had a marijuana grow operation at their residence. He also

2

informed the officers that he had seen a marijuana grow operation in defendant's garage "over one year ago."

Based on the information received from the Hammond's son, Detective Bailey of the Ravalli County Sheriff's Office obtained a search warrant for the Hammond residence and executed it on the evening of December 10, 1992. That search resulted in the confiscation of marijuana, growing equipment, and drug paraphernalia. The investigating officers asked the Hammonds if they knew whether defendant was also growing marijuana. Timothy Hammond responded that he had seen marijuana in defendant's garage "about two months ago."

Detective Bailey testified that, based on the information received from the Hammond's son and the statement made by Timothy Hammond, he thought he had probable cause to obtain a search warrant for defendant's residence. He further testified that he had no reason to believe that the County Attorney or a Justice of the Peace was unavailable that evening to prepare and review a warrant application. However, after discussing the situation with Sheriff Printz, the Ravalli County Sheriff, it was decided that Detective Bailey and the other officers who had conducted the search of the Hammond residence would proceed to defendant's home without a warrant and attempt to obtain permission to search his residence. Sheriff Printz testified that one of the reasons for this decision was concern about the cost of overtime compensation if time had been taken to obtain a search warrant.

3

At approximately 9 p.m. on December 10, 1992, five armed and uniformed Ravalli County deputies arrived at defendant's home for the purpose of investigating alleged criminal activity. Detective Bailey and another officer approached the front door, and three other officers went to the back of the residence to detain anyone who attempted to leave. Detective Bailey turned on a tape recorder in order to document the ensuing conversation with defendant and his wife. However, the Rushtons were unaware that their conversation with the officers was being recorded.

At the time the officers arrived and knocked on the front door, defendant was already in bed for the evening, and Susan, wearing pajamas and a robe, was preparing for bed.

When the Rushtons opened the door, Detective Bailey asked them their names, identified himself and the other officer, and inquired, "Do you have a moment where we could come in and speak to you?" The Rushtons were not told that the officers were there for the express purpose of attempting to obtain permission to search their home or to inquire about alleged criminal activity. Defendant invited the officers to come in out of the rain and offered them seats in the living room. Defendant and his wife sat on the living room couch and Detective Bailey sat in a chair across from them. The other officer remained standing in the doorway which led out of the living room. Defendant testified that he felt he was not free to leave the room at this point.

During this time, the following exchange occurred:

4

BAILEY: Folks, I've gotta advise you of what's going on here, and you're probably not gonna be too happy about it. Go ahead and sit down.

DEFENDANT: Ok.

BAILEY: We, uh, understand you're friends...you're Mr. Rushton, right? Susan?

DEFENDANT: Yeah.

BAILEY: Ok. You're friends with Mr. Hammond.

DEFENDANT: Yeah. Everything's Ok, isn't it?

BAILEY: Well, other than the marijuana grow operation in his basement.

SUSAN: In Mr. Hammond's basement?

BAILEY: Yes, ma'am.

DEFENDANT: Our friends, the Hammond's...?

BAILEY: Yes. And your friends the Hammonds indicate that you also have a marijuana grow in your garage. And, our purpose here is to see if we can clean this situation up, and if in fact there is marijuana there, then we'll have to do what we have to do, and...if not, then there's no problem. He said it hasn't been too long ago he seen them there. Is that true, sir?

DEFENDANT: That's true sir.

BAILEY: Ok. I want to do this the easy way, ok?

DEFENDANT: Ah, me too. Me too.

BAILEY: Ok. The easy way is that, uh, we have a Consent to Search form here, which you have to agree to sign, and I'll...I'll be very frank, <u>if you don't, we'll be sitting here for a number of hours</u>, and we'll have to go get a search warrant. But, with the Consent to Search, we'll just go ahead and do it, and the only thing I'm gonna promise you is when we leave here, you folks'll be staying here. Ok? <u>We won't arrest you here</u>. Eventually, though, we'll have to go to the County Attorney. Understand that?

DEFENDANT: I think...

5

BAILEY: Go ahead and show him the form.

DEFENDANT: Oh, Ok. Let me just get...

BAILEY: Go ahead and ask some questions. Go ahead.

DEFENDANT: Come on in. [Third officer enters the home] Uh,... I'm just being honest with you...you been nice and honest with me.

BAILEY: That's fine. We just want to do this the easy way.

DEFENDANT: Quite honestly, do I need a lawyer here or anything? I mean...I'm not, I'm not saying let me get my damn lawyer, I'm not...I don't have a lawyer, I don't KNOW a lawyer; that's not what I'm saying. Ok? I'm saying,...from...I know, you can read me that, that's not what I'm saying, I'm saying...you know, right. [Emphasis added].

It is undisputed that defendant was not given a *Miranda* warning prior to the foregoing exchange. When defendant expressed concern about whether he needed a lawyer, Detective Bailey informed defendant that he was not required to consent to a search, but reiterated the promise that if marijuana was found, neither defendant nor his wife would be arrested at that time. Defendant discussed the matter with Susan and stated, "I mean...what about... would you feel better if there was a lawyer here while they search this. You know they're gonna search; they have the right to search. You know what they're gonna find."

Detective Bailey then asked the Rushtons to read and sign the form. After describing more about the search process, Detective Bailey stated the following:

BAILEY: You'll be given a complete receipt for every item that's taken. You know, one thing I want to do... Like I said, irregardless (sic) of anything tonight, we will not arrest you, but, you know, we are going to

6

advise you of your Miranda Warning. That's something that's kinda customary.

At this time, the Rushtons were given *Miranda* warnings and Detective Bailey asked defendant if he wished to make a statement. Defendant declined, saying, "I don't really think I better make a statement yet." After some further discussion, defendant signed the form and a search was immediately conducted.

The officers seized fourteen immature marijuana plants, four mature plants, dried marijuana seeds, and growing implements and literature.

As a result of the questioning and search of defendant's residence, defendant was charged by information on December 22, 1992, with felony criminal possession of dangerous drugs, in violation of § 45-9-102, MCA. Defendant entered a plea of not guilty and, on February 9, 1993, filed a motion to suppress the statements made and the evidence seized from his home on the night of December 10. Following an evidentiary hearing, the District Court entered an order in which this motion was denied.

On August 11, 1993, after this Court denied supervisory control, defendant entered a plea of guilty to the offense charged, conditioned on his right to appeal the District Court's order. The court accepted this plea, and on August 20, 1993, defendant was found guilty of the offense charged and sentenced. From the District Court's order denying the motion to suppress, defendant appeals.

7

## STANDARD OF REVIEW

When reviewing a district court's denial of a motion to suppress, this Court determines whether there is substantial credible evidence to support the court's findings of fact, and whether those findings were correctly applied as a matter of law. *State v. Beach* (1985), 217 Mont. 132, 147, 705 P.2d 94, 103. Here, defendant does not disagree with the court's factual findings but contends the court erred when it concluded *Miranda* warnings were not required prior to the officer's questioning of defendant and that defendant voluntarily consented to a search of his residence. Our review, therefore, is plenary and we must determine whether the court's conclusions were correct as a matter of law. *State v. Sage* (1992), 255 Mont. 227, 229, 841 P.2d 1142, 1143.

## ISSUE 1

Did the District Court err when it denied defendant's motion to suppress evidence of statements made prior to the time defendant was given *Miranda* warnings?

When asked by Detective Bailey whether there was a marijuana grow operation which Timothy Hammond would have recently seen, defendant admitted that this statement was true. Defendant contends that the court should have granted his motion to suppress this admission, and other statements made to the officers when asked if he would consent to a search, because he was not advised of his *Miranda* rights prior to making these statements. He asserts that Detective Bailey's questioning constituted a custodial

8

interrogation triggering the need for *Miranda* warnings because he reasonably believed his freedom was significantly restricted at the time Detective Bailey was in his home questioning him.

The District Court, in its order, relied heavily on the contents of the recorded conversation between Detective Bailey and the Rushtons, and circumstances such as defendant's age and education, the brevity of the interrogation, and the lack of physical restraints. The court concluded that defendant was not in custody or deprived of his freedom in any significant way when Detective Bailey asked the critical question and defendant answered it affirmatively.

The United States Supreme Court has ruled that states may not use confessions or admissions resulting from a "custodial interrogation" unless the proper *Miranda* warnings have been given. *Miranda v. Arizona* (1966), 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694, 706. The Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. *Accord, State v. Staat* (1991), 251 Mont. 1, 6, 822 P.2d 643, 646. Thus, before determining whether Detective Bailey should have given defendant *Miranda* warnings in this instance, we must first determine whether there was a "custodial interrogation."

This Court has established guidelines for determining when a "custodial interrogation" occurs. If a person has no free right to

9

leave, either from the express or implied conduct of police officers, then the interrogation is custodial in nature. *State v. Ellinger* (1986), 223 Mont. 349, 355, 725 P.2d 1201, 1204; *State v. Osteen* (1985), 216 Mont. 258, 265, 700 P.2d 188, 193. The United States Supreme Court and this Court have made clear that interrogation which occurs in a suspect's home is subject to *Miranda* where it occurs in an environment in which the suspect's freedom of action has been significantly restricted. *Orozco v. Texas* (1969), 394 U.S. 324, 89 S. Ct. 1095, 22 L. Ed. 2d 311; *State v. Ryan* (1979), 182 Mont. 130, 133-35, 595 P.2d 1146, 1147-48. However, even when the defendant is the focus of a criminal investigation at the time of questioning by officers, *Miranda* warnings are only required where a person's freedom is so restricted as to render him in custody. *State v. Dannels* (1987), 226 Mont. 80, 87, 734 P.2d 188, 193.

To determine if a custodial interrogation has occurred, this Court considers each case on a case-by-case basis and looks to whether a "reasonable person" would not feel free to leave, after considering such factors as the time and place of interrogation, the length and mood of interrogation, and persons present during the questioning. *State v. Lapp* (1983), 202 Mont. 327, 331, 658 P.2d 400, 403; *Staat*, 822 P.2d at 646.

Here, two armed officers were in defendant's home late at night after arousing him from bed. When Detective Bailey and the other officers went to defendant's home, it is clear that they

10

suspected defendant of criminal activity. Moreover, the officers specifically intended to obtain defendant's consent to conduct a search of his home because, for administrative reasons only, they did not attempt to get a warrant. Defendant was not told why the officers wanted to talk with him, nor that he had the right to refuse them entry. Although defendant quickly put on some clothes, his wife was dressed only in a robe and pajamas during the time they were questioned by Detective Bailey. Furthermore, after the Rushtons were told to sit on the couch, a second armed officer remained standing and blocked the exit from the room. Defendant testified that he did not feel he was free to leave and the officers present admitted their intention to stop and detain anyone who attempted to leave. At that time, without providing *Miranda* warnings, Detective Bailey asked a direct question of defendant for the purpose of obtaining evidence against him.

After considering these circumstances, we conclude that a person in defendant's position could reasonably believe that his freedom was restricted and he was not free to leave. Therefore, we hold that the questioning of defendant constituted a custodial interrogation.

In *Osteen*, 700 P.2d at 188, this Court addressed a similar situation. In that case, Narvin Osteen was at home when two officers knocked on his front door sometime after 10 p.m. The officers requested admission and were invited in by Osteen, but did not tell Osteen why they wanted to talk with him, nor that he had

11

the right to refuse them entry. The officers clearly suspected Osteen of criminal activity and proceeded to question him without giving him *Miranda* warnings. After eliciting certain admissions from Osteen, he was arrested for aggravated assault. We concluded that Osteen was questioned in a custodial atmosphere and that the statements he made during that interrogation were inadmissible.

Although the State attempts to distinguish defendant's situation from *Osteen* by emphasizing certain factors which it asserts were less "coercive," we do not find the distinctions in *Osteen* as significant as the similarities.

Because we have determined that defendant was interrogated in a custodial atmosphere requiring *Miranda* warnings under the Fifth Amendment to the United States Constitution, and Article II, Section 25, of the Montana Constitution, the failure of Detective Bailey to preface his questions with *Miranda* warnings renders inadmissible the statements defendant made. The District Court erred when it concluded that *Miranda* warnings were not required and denied defendant's motion to suppress evidence of defendant's statements.

### ISSUE 2

Did the District Court err when it denied defendant's motion to suppress evidence seized during an unwarranted search of his residence?

Under the Fourth and Fourteenth Amendments to the United States Constitution, and Article II, Section 11, of the Montana

12

Constitution, warrantless searches and seizures conducted inside a home are *per se* unreasonable subject only to a few carefully drawn exceptions. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854; *State v. Kim* (1989), 239 Mont. 189, 779 P.2d 512. One of the recognized exceptions to the warrant requirement arises when a citizen has knowledgeably and voluntarily consented to a search. *Schneckloth*, 412 U.S. at 219; § 46-5-101, MCA.

"'[W]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given.' *Bumper v. North Carolina* [1968], 391 U.S. 543, 548." *Schneckloth*, 412 U.S. at 222. *Accord, Kim*, 779 P.2d at 517.

The *Schneckloth* Court made clear that the Constitution requires that consent be voluntarily given, uncontaminated by any duress or coercion, express or implied. In order to determine whether consent to a search was given voluntarily, this Court has adopted the same test used by the Supreme Court, which is the "totality of the circumstances" test. *Kim*, 779 P.2d at 517.

In this instance, defendant contends his consent to the search was not given freely and that the court erred when it denied his motion to suppress the evidence seized during the search. Defendant alleges his consent was the product of illegal questioning, the threat that he and his wife would be held in custody "for a number of hours" until a warrant could be obtained,

13

and an implied threat that they would be arrested if consent was not given for a search.

The State counters with the assertion that the court correctly denied the motion to suppress because defendant was clearly told that he did not have to consent to the search, the officers were polite and nonaggressive during this incident, and his verbal and written consent were not coerced in any manner.

Although we agree that defendant was specifically told he was not required to consent to a search, this factor is not controlling. In *Schneckloth*, 412 U.S. at 248-49, the Court specifically held that a subject's knowledge of a right to refuse is only one of the factors to be taken into account and is not determinative of the question of voluntariness. Here, after considering the totality of the circumstances, we conclude that several factors, when considered cumulatively, negate the voluntariness of defendant's verbal and written consent.

First, as concluded under the first issue, defendant's admission that there was marijuana on the premises was extracted improperly without *Miranda* warnings, after entry to defendant's home was gained without a warrant. Although we are not adopting a rule which would invalidate consent in any situation following an unlawful interrogation, we conclude the State has not met the burden in this instance of demonstrating that defendant's consent was not affected by the fact that he had made a highly incriminating statement.

14

Furthermore, Detective Bailey explicitly promised that if defendant consented to the search, he would not arrest and incarcerate the Rushtons. The court concluded that this did not constitute an implied threat to incarcerate if consent was withheld. However, after considering this statement in light of the entire circumstances, we conclude the implication existed that if defendant did not cooperate, incarceration would result, and that this contributed to the coercive atmosphere in which defendant's consent was received.

The statement made by Officer Bailey that the officers would remain in the Rushton's home for several hours, if necessary, until a warrant could be obtained raises particular concerns. When Officer Bailey said, "I'll be very frank, if you don't [consent], we'll be sitting here for a number of hours, and we'll have to go get a search warrant," the message was conveyed that the officers would remain in the house, with defendant and his wife in custody, until a search warrant was obtained. The District Court relied on this Court's decision in *State v. Yoss* (1965), 146 Mont. 508, 409 P.2d 452, to conclude that this statement was permissible. However, we conclude that this statement was a misrepresentation of the law and was coercive in nature.

In *Yoss*, the defendant had been arrested pursuant to a valid warrant and was legally in custody. We held that neither the fact that defendant was informed a search warrant could be obtained if he refused to consent, nor the fact that he was under arrest at the

15

time consent was given, rendered the consent coerced. *Yoss*, 409 P.2d at 455.

Here, however, the officers had no right to imply that they could sit in defendant's home for a number of hours while a warrant was obtained. In this instance, there was no valid warrant permitting the officers to be in defendant's home. Defendant had allowed the officers to come into his home after they asked if they could talk with him. However, they had no right to remain in his home, absent a valid warrant, if defendant revoked that consent. *See, e.g., United States v. Kelly* (6th Cir. 1990), 913 F.2d 261 (consent terminated when defendant revokes previously given consent). While the officers may have been able to remain on defendant's property during the time it took to obtain a warrant, it was a misrepresentation to imply that they could remain in defendant's home, keeping him and his wife in custody, while a warrant was obtained.

Based on these circumstances, considered in their totality, we hold that defendant's consent was obtained in a coercive manner and was not given freely and voluntarily. Therefore, evidence obtained during that search was seized in violation of the Fourth Amendment to the United States Constitution and Article II, Section 11, of the Montana Constitution, and is inadmissible. The District Court erred when it denied the motion to suppress the evidence seized during the search of defendant's residence.

The order of the District Court is reversed.  Pursuant to the plea agreement, the conviction is reversed and the case remanded for further proceedings.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

17

March 22, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Michael J. Sherwood
Attorney at Law
P. O. Box 8142
Missoula, MT 59807

George H. Corn, County Attorney
Gerald D. Williams, Deputy Attorney
Ravalli County Courthouse, Box 5008
Hamilton, MT 59840

Hon. Joseph Mazurek, Attorney General
Kathey Seeley, Assistant
Justice Bldg.
Helena, MT 59620

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
   Deputy