No. 98-383

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 317N

STATE OF MONTANA,

Plaintiff and Appellant,

v.

JOSEPH W. PINKLEY,

Defendant and Respondent.

APPEAL FROM: District Court of the Ninth Judicial District,

In and for the County of Toole,

The Honorable Marc G. Buyske, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Hon. Joseph P. Mazurek, Attorney General; Patricia J. Jordan,

Assistant Attorney General; Elizabeth Horsman, Assistant Attorney

General, Special Deputy Toole County Attorney; Helena, Montana

For Respondent:

Robert G. Olson, Frisbee, Moore & Olson; Cut Bank, Montana

Submitted on Briefs: November 12, 1998

Decided: December 23, 1998

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

**¶1. Pursuant to Section I, paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

**¶2. The defendant, Joseph W. Pinkley, was charged by information in the District Court for the Ninth Judicial District in Toole County with misdemeanor sexual assault and official misconduct. Pinkley moved to suppress statements that he had made to Toole County law enforcement officials. Following a hearing, the District Court granted the motion to suppress the statements. The State appeals. We affirm the order of the District Court.**

**¶3. The sole issue on appeal is whether Pinkley was entitled to a *Miranda* warning prior to being questioned by the law enforcement officials.**

FACTUAL BACKGROUND

**¶4. Joseph Pinkley, a deputy sheriff for Toole County, was on duty during the early morning of December 6, 1997, when, at approximately 2:30 a.m., a woman contacted the Toole County Sheriff and alleged that an officer had sexually assaulted her. In response to the complaint, Sheriff Vern Anderson, Undersheriff David Robins, and Chief Deputy Donna Matoon all went directly to the home of the woman's friend where they personally interviewed the complainant. Based on the woman's description of the officer, it was clear to them that she was referring to Pinkley.**

**¶5. Robins went immediately to the Toole County Sheriff's Department. Pinkley, who was still in uniform and on duty, noticed Robins, who usually works the day shift, and asked Robins, "What's the problem?" Robins answered, "Let's go in the back and talk."**

¶6. Robins and Pinkley went to the officers' workroom, which for security reasons is accessible only to authorized personnel of the Sheriff's Department. However, unlike the evidence locker and the Sheriff's and Undersheriff's offices, the workroom is unlocked and officers have free access to the workroom.

¶7. Robins asked Pinkley whether he had had any dealings that night with the complainant. Pinkley told him that he and another officer had given her a ride home after they had noticed her walking home in the cold while intoxicated. Robins testified that he remembered telling Pinkley that the reason for his question was that the woman had made an allegation that Pinkley had sexually assaulted her. Robins then told Pinkley that he wanted to wait to discuss the matter any further until Anderson and Matoon, who had taken the woman home after their interview with her, arrived. Robins had coffee while they waited in the workroom.

¶8. When the other officers arrived, they joined Robins and Pinkley in the workroom. Robins testified that Pinkley was asked again to describe his dealings with the woman. Pinkley answered questions from the officers, all of whom were his supervisors, and who at times sought clarification of Pinkley's answers. After the meeting, Robins instructed Pinkley to prepare a written statement, and Pinkley did so. At no point during or prior to either his oral or written statements was Pinkley advised of his *Miranda*[(1)] rights.

¶9. Pinkley's description of his dealings with the woman contradicted the woman's allegations. For that reason, on December 8, 1997, Robins requested an independent investigation by the Criminal Investigation Bureau of the Montana Department of Justice. On December 11, the investigating agent from the CIB interviewed Pinkley after advising him of his rights pursuant to *Miranda v. Arizona*.

¶10. On February 5, 1998, Pinkley was charged by information in the District Court with misdemeanor sexual assault and misdemeanor official misconduct. He pled not guilty to both charges, and later moved to suppress both the written and oral statements that he made on December 6, 1997, based on the fact that he had not first been given a *Miranda* warning. After a hearing, the District Court granted the motion to suppress. It found that there had been a custodial interrogation, prior to which Pinkley was entitled to a *Miranda* warning. The District Court also rejected the State's argument that Pinkley's knowledge of *Miranda* rights excused the need for a *Miranda* warning in this case.

## DISCUSSION

**¶11. Was Pinkley entitled to a *Miranda* warning prior to being questioned by the law enforcement officials?**

**¶12. We review a district court's order to suppress to determine whether the district court's interpretation and application of the law is correct. *See State v. Scheetz* (Mont. 1997), 950 P.2d 722, 724, 54 St. Rep. 1286, 1287.**

**¶13. "For the *Miranda* protections to apply, the defendant must be subject to custodial interrogation." *State v. Woods* (1997), 283 Mont. 359, 368, 942 P.2d 88, 94. Custodial interrogation is any situation in which "a reasonable person being interrogated would feel he was in custody or otherwise significantly deprived of his freedom." *Woods*, 283 Mont. at 368, 942 P.2d at 94. The State contends that Pinkley was neither in custody nor subject to interrogation and, therefore, that he was not entitled to a *Miranda* warning.**

**¶14. In *Woods*, 283 Mont. at 370, 942 P.2d at 95, we determined that whether a defendant's statements are the result of interrogation depends on the existence of some degree of compulsion. Here, Pinkley was asked specific questions about his conduct that night by his superior officers and was expected to provide answers to the officers' inquiries. He was also instructed to restate in writing his version of the events. It is reasonable to assume that Pinkley felt compelled to respond to his superiors' inquiries. In fact, Robins testified that Pinkley would have been insubordinate had he refused to do so. We conclude that he was, therefore, interrogated.**

**¶15. Whether Pinkley was in custody was a factual question. *See Woods*, 283 Mont. at 368, 942 P.2d at 94. We held in *State v. Rushton* (1994), 264 Mont. 248, 255-56, 870 P.2d 1355, 1360, that "[i]f a person has no free right to leave, either from the express or implied conduct of police officers, then the interrogation is custodial in nature." The factors which we consider in our determination of whether an interrogation is custodial include "the time and place of interrogation, the length and mood of interrogation, and persons present during the questioning." *Rushton*, 264 Mont. at 256, 870 P.2d at 1360.**

¶16. The District Court relied heavily on the persons present for, and the time and place of, the interrogation, stating that "a reasonable person would not have felt free to leave this interrogation." We agree. The fact that Pinkley's superiors had gathered at a time of day they would not normally be present to question him about the complaint against him strongly suggested that he was not free to leave. Although the location was less significant than it would have been to a "civilian," it was still within the confines of a law enforcement facility; and, finally, everyone present was a law enforcement official. The State has offered no evidence of the length or mood of the interrogation to suggest that it was anything but custodial.

¶17. We conclude, therefore, that the District Court correctly concluded that Pinkley's interrogation was custodial and affirm the order of the District Court.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

/S/ JAMES C. NELSON

1. [1]*Miranda v. Arizona* (1966), 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694