*251 JUSTICE LEAPHABT,
concurring in part and dissenting in part.
¶60 I concur with the Court’s resolution of issues one and three. For the following reasons, I dissent as to issue number two.
¶61 The District Court concluded that Elison was not in custody when Officer Conrad asked him certain questions about marijuana and that Miranda therefore does not apply. The District Court concluded further that “[i]t was within Officer Conrad’s discretion after he had a particularized suspicion to effectuate the traffic stop, to ask Defendant investigatory questions designed to identify him as a witness or a suspect in a reported crime.”
¶62 Citing State v. Rushton (1994), 264 Mont. 248, 870 P.2d 1355, Elison argues that when a person is not free to leave because of the express or implied conduct of the police, any interrogation is custodial in nature. In Rushton, the Court concluded that “[t]o determine if a custodial interrogation has occurred, this Court considers each case on a case-by-case basis and looks to whether a ‘reasonable person’ would not feel free to leave, after considering such factors as the time and place of interrogation, the length and mood of interrogation, and persons present during the questioning.”Rushton, 264 Mont. at 256, 870 P.2d at 1360. Elison argues that he was “secured” at the back of his truck, that no reasonable person would have felt free to leave, and that the District Court found that Elison was not free to leave. Elison argues further that Officer Conrad’s questions were not merely “investigatory” but went to “the heart of the offenses charged.”
¶63 The State responds that Officer Conrad’s questions were investigatory in nature and did not require a Miranda warning. Further, citing State v. Allen, 1998 MT 293, 295 Mont. 139, 970 P.2d 81, the State argues that investigative questions made during a temporary roadside detention need not be preceded by a Miranda warning even when a suspect is not free to leave. The State urges that the questions occurred during a “public, routine, and temporary” stop.
¶64 In Allen, defendant Allen was stopped by police because his vehicle lacked a front license plate. The police officer approached Allen and explained why he had stopped him. The officer came to suspect that Allen was improperly using a demonstrator plate and asked Allen to exit the car so that they could talk. As the officer explained the charges against Allen, the officer smelled alcohol on Allen’s person and asked Allen whether he had been drinking. Allen admitted having two beers. The officer told Allen that he did not have the right to call his lawyer and had him perform sobriety tests, which he failed. *252 The officer arrested Allen, brought him to the police station, and had him provide a breath sample that showed a BAC of 0.13. At that time Allen was advised of his rights under Miranda. Relying on Berkemer v. McCarty (1983), 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317, the Allen Court concluded that “[t]he stop was still public, routine and temporary in nature [and that] [t]hose critical facts distinguish it from ‘custodial’ interrogations.” Allen, ¶ 13.
¶65 In Berkemer, an Ohio highway patrol officer observed a car weaving in and out of traffic and stopped the car. The officer had Berkemer get out of the car, noticed that he had trouble standing, and asked him whether he had used intoxicants. Berkemer responded that he had recently drunk alcohol and smoked marijuana. Berkemer was arrested and taken to jail. However, at no time before Berkemer went to jail was he advised of his rights under Miranda. The Berkemer Court held that “a person subjected to custodial interrogation is entitled to the benefit of the procedural safeguards enunciated in Miranda, regardless of the nature or severity of the offense of which he is suspected or for which he was arrested.” Berkemer, 468 U.S. at 434, 104 S.Ct. at 3147, 82 L.Ed.2d at 331.
¶66 However, the Berkemer Court further held that the roadside questioning of a motorist detained pursuant to “a routine traffic stop” should not be considered custodial interrogation. Berkemer, 468 U.S. at 438, 441, 104 S.Ct. at 3149, 82 L.Ed.2d at 333-35 (emphasis added). The Court in Berkemer found that an ordinary traffic stop has two features that “mitigate the danger that a person questioned will be induced ‘to speak where he would not otherwise do so freely.’ ” Berkemer, 468 U.S. at 437, 104 S.Ct. at 3149, 82 L.Ed.2d at 333. First, “detention of a motorist pursuant to a traffic stop is presumptively temporary and brief.” Berkemer, 468 U.S. at 437, 104 S.Ct. at 3149, 82 L.Ed.2d at 333. The Berkemer Court contrasted questions during such a detention with stationhouse interrogations where “the detainee often is aware that questioning will continue until he provides his interrogators the answers they seek.” Berkemer, 468 U.S. at 438, 104 S.Ct. at 3149, 82 L.Ed.2d at 333. Second, the Berkemer Court concluded that the “atmosphere surrounding an ordinary traffic stop is substantially less ‘police dominated’ than that surrounding the kinds of interrogation at issue in Miranda itself.” Berkemer, 468 U.S. at 438-39, 104 S.Ct. at 3149, 82 L.Ed.2d at 334. The Court concluded that most roadside stops are analogous to Terry stops. The Berkemer Court conceded, however, that “our adherence to the doctrine just re *253 counted will mean that the police and lower courts will continue occasionally to have difficulty deciding exactly when a suspect has been taken into custody.” Berkemer, 468 U.S. at 441, 104 S.Ct. at 3151, 82 L.Ed.2d at 335.
¶67 In the present case, the State’s reliance on Allen and Berkemer is not persuasive. The State has not shown that Officer Conrad’s stop of Elison was “routine.” As the majority notes, Officer Conrad informed Elison of Gibson’s observations and told him that he smelled marijuana. Further, Gibson’s observations indicate that Elison realized that an occupant of a police car had seen him smoking marijuana. Thus, when Officer Conrad stopped Elison, Elison had no reasonable grounds to believe that his was a routine ordinary traffic stop of a presumptively temporary duration. Both Elison and Conrad knew full well that Elison was being stopped on suspicion of illegal drugs-not for a traffic violation.
¶68 Berkemer makes clear that in determining whether a person questioned will be induced “to speak where he would not otherwise do so freely,” the nature of the stop is important. Berkemer, 468 U.S. at 437, 104 S.Ct. at 3149, 82 L.Ed.2d at 333. In other words, is the stop “presumptively temporary and brief?” Berkemer, 468 U.S. at 437, 104 S.Ct. at 3149, 82 L.Ed.2d at 333. Both the officer and Elison knew that the stop was for suspected drug use. The stop was not a “traffic” stop, it was not “routine” and it was not going to be “presumptively temporary and brief.” In my view, Miranda should apply under these facts. I would reverse on issue two.
JUSTICES HUNT and TRIEWEILER, join in the foregoing concurring and dissenting opinion.